UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:

TP5, LLC,

Case No. 13-21573-EPK
Chapter 11

Debtor.
_____/

**MOTION TO DISMISS BANKRUPTCY CASE AS BAD FAITH
FILING OR, IN THE ALTERNATIVE, FOR RELIEF FROM STAY OR,
IN THE ALTERNATIVE, FOR DETERMINATION OF INAPPLICABILITY
OF STAY OR, IN THE ALTERNATIVE, FOR ADEQUATE PROTECTION**

OB Real Estate Holdings 1732, LLC ("OB Real Estate"), by undersigned counsel and pursuant to 11 U.S.C. §§ 105, 361, 362(d)(1), 362(d)(2) and 1112(b), Federal Rule of Bankruptcy Procedure 4001 and Local Rule 4001-1, files this Motion to Dismiss Bankruptcy Case as Bad Faith Filing or, in the Alternative, for Relief from Stay or, in the Alternative, for Determination of Inapplicability of Stay, or, in the Alternative, for Adequate Protection, and would show the Court as follows:

**PRELIMINARY STATEMENT**

In *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393 (11th Cir. 1988), the United States Court of Appeals for the Eleventh Circuit set forth six factors for the bankruptcy courts to consider in evaluating whether a bankruptcy petition has been filed in bad faith. All six *Phoenix Piccadilly* factors are present in this case, warranting its dismissal as a bad faith filing.

{M0537102.1}

First, TP5, LLC (the "Debtor"), is a dissolved Florida limited liability company that has, at most, an interest in one asset—the real property commonly known as 525 South Flagler Drive, West Palm Beach, FL 33401 (the "Property").[1]

Second, as may be evidenced by the Debtor's *List of Creditors Holding 20 Largest Unsecured Claims* [D.E. 1, p. 4], the Debtor has no unsecured creditors.

Third, upon information and belief, the Debtor—an administratively dissolved limited liability company—has no employees.

Fourth, at the time of filing the Debtor's skeletal petition for chapter 11 relief, the Property was the subject of a pending foreclosure action, Case 50-2010-CA-026014 XXXX MB (the "State Court Action") in the Circuit Court for the 15th Judicial Circuit, in and for Palm Beach County ("State Court").  Indeed, the Debtor filed its petition just three days before the scheduled foreclosure sale of the Property.

Fifth, the Debtor's financial problems involve a two-party dispute between the Debtor and OB Real Estate, which could (and would) have been resolved in the pending State Court Action.  The bankruptcy court "was not intended as an alternate forum for private disputes that only involve … disputants for which there [is] a well established … forum." *In re Panache Development Co., Inc.*, 123 B.R. 929, 932 (Bankr. S.D. Fla. 1991) (quoting *In re Harvey Probber, Inc.*, 44 B.R. 647, 650 (Bankr. D. Mass. 1984)).

Sixth, the timing of the Debtor's filing of its Chapter 11 petition, just three days before the scheduled foreclosure sale of the Property and after a failed attempt to forum shop by

---

[1] It is questionable whether the Debtor even has an interest in the Property as it transferred such to TransAmerican Comercial, Ltd. by quitclaim deed on December 4, 2012.  A true and correct copy of the quitclaim deed is attached hereto as Exhibit A.  However, as the Debtor arguably has a right of redemption as to the transferred Property under the Final Judgment (defined below), the instant motion is being filed in an abundance of caution.

{M0537102.1}

removing the State Court Action to this Court, provides clear evidence of an intent to delay and frustrate the legitimate efforts of OB Real Estate to enforce its rights.

As all six *Phoenix Piccadilly* factors are present here, this Court should dismiss this case as a bad faith filing. Alternatively, this Court should grant OB Real Estate relief from stay pursuant to 11 U.S.C. §§ 362(d)(1) and (2).

With respect to Section 362(d)(1), "cause" exists to lift the stay because the Debtor, among other things, filed this bankruptcy proceeding in bad faith, lacks any income to fund a chapter 11 plan, transferred the Property to a third party in violation of the loan documents and breached its obligations under the Forbearance Agreement (as defined below).

In addition, the stay should be lifted pursuant to 11 U.S.C. § 362(d)(2) because: (i) the Debtor has no equity in the Property; and (ii) there is no reasonable possibility of a reorganization within a reasonable time.

## BACKGROUND FACTS

1. On or about March 30, 2007, the Debtor executed and delivered to OB Real Estate's predecessor in interest, OptimumBank, a promissory note in the original principal amount of $1,000,000.00 ("Note") and a mortgage securing repayment of the indebtedness with the Property ("Mortgage"). True and correct copies of the Note and Mortgage are attached hereto as Exhibits A and B, respectively. The Mortgage was recorded on April 5, 2007 in Official Records Book 21592, Page 1935 of the Public Records of Palm Beach County, Florida.

2. On or about July 25, 2008, the Debtor executed and delivered to OB Real Estate's predecessor in interest, OptimumBank: (i) a future advance note in the principal amount of $53,000.00 ("Advance Note"); (ii) a consolidated and replacement promissory note in the principal amount of $1,035,811.75 ("Consolidated Note"); and (iii) a mortgage and loan modification agreement securing repayment of the Advance Note and Consolidated Note with the Property ("Mortgage Modification"). True and correct copies of the Advance Note,

{M0537102.1}

Consolidated Note and Mortgage Modification are attached hereto as Exhibits C, D and E, respectively. The Mortgage Modification was recorded in Official Records Book 22796, Page 1037 of the Public Records of Palm Beach County, Florida.

3. Prior to May 17, 2013 (the "Petition Date"), the Debtor defaulted under the Consolidated Note by failing to make the monthly installment payments that came due on July 1, 2010.

4. On or about October 14, 2010, OptimumBank recorded a Lis Pendens and filed a complaint for, *inter alia*, enforcement of the Consolidated Note and foreclosure, commencing the State Court Action.

5. On November 29, 2010, the State Court entered an order enforcing the assignment of rents and leases ("Rents Order"). A true and correct copy of the Rents Order is attached as Exhibit F.

6. On December 20, 2010, the State Court entered an order on a hearing to show cause, pursuant to Fla. Stat. § 702.10(2), requiring the Debtor to commence making monthly mortgage payments to OptimumBank in the amount of $4,315.88, beginning January 1, 2011 ("Order on Hearing to Show Cause"). A true and correct copy of the Order on Hearing to Show Cause is attached hereto as Exhibit G.

7. On or about April 12, 2011, OptimumBank and the Debtor entered into a Stipulation and Agreed Order ("Forbearance Stipulation") whereby the Debtor agreed to, *inter alia*, make certain specified payments to OptimumBank, provide annual financial statements and tax returns for Mr. Jeffrey Siskind, pay the condominium maintenance fees as they become due and provide proof of same to OptimumBank and otherwise comply with the obligations in the underlying loan documents (to the extent not modified by the Forbearance Stipulation). A true and correct copy of the Forbearance Stipulation is attached hereto as Exhibit H.

{M0537102.1}

8. The Debtor breached the Forbearance Stipulation by: (i) failing to make the specified payments as agreed; (ii) transferring the Property to TransAmerican Comercial, Ltd. without OptimumBank's consent; (iii) failing to provide annual financial statements and tax returns for Mr. Siskind as agreed; and (iv) failing to provide proof of payment of the condominium maintenance fees. As a consequence, on January 15, 2013, the State Court entered a final judgment of foreclosure ("Final Judgment") scheduling a foreclosure sale of the Property for February 25, 2013. The Final Judgment was later assigned from OptimumBank to OB Real Estate on April 29, 2013 ("Assignment"). True and correct copies of the Final Judgment and Assignment are attached hereto as Composite Exhibit I.

9. On or about January 28, 2013, the Debtor filed a Motion for Reconsideration of the Final Judgment. That motion was denied by an Order of the State Court dated April 18, 2013. A true and correct copy of the State Court's Order denying the motion for reconsideration is attached hereto as Exhibit J.

10. On February 11, 2013, the Debtor's principal, Mr. Siskind, filed a voluntary petition for chapter 11 relief, initiating case no. 13-13096-PGH ("Siskind Bankruptcy Proceeding"). On February 25, 2013, Mr. Siskind also filed a Notice of Removal of the State Court Action and Motion for Substantive Consolidation, initiating an adversary proceeding bearing case no. 13-01147-PGH (the "Adversary Proceeding"). As a result of these actions, the clerk of the State Court canceled the February 25, 2013 foreclosure sale of the Property.

11. On February 28, 2013, Judge Hyman entered an *Order (i) Denying Notice of Removal, Motion for Substantive Consolidation, and Declaratory Relief and (2) Sanctioning Attorney* ("Order Denying Removal") [D.E. 2] in the Adversary Proceeding. A true and correct copy of this Order is attached hereto as Exhibit K. By subsequent Order [D.E. 28], the sanctions imposed against Mr. Siskind were reduced to $250.00.

{M0537102.1}

12. On March 12, 2013, OptimumBank filed a motion in State Court to reschedule the foreclosure sale. On April 18, 2013, after multiple hearings at which Mr. Siskind requested, *inter alia*, that the State Court extend the automatic stay arising from his individual bankruptcy to the Debtor, the State Court entered an Order rescheduling the foreclosure sale of the Property for May 20, 2013. A true and correct copy of that Order rescheduling the sale is attached hereto as Exhibit L.

13. On May 9, 2013, dissatisfied with the State Court's election to reschedule the foreclosure sale and refusal to extend the automatic stay, Mr. Siskind filed emergency motions in both the Siskind Bankruptcy Proceeding and the Adversary Proceeding requesting a stay of the State Court Action. *See* Siskind Bankruptcy Proceeding [D.E. 55]; and Adversary Proceeding [D.E. 24]. On May 14, 2013, Judge Hyman conducted a hearing and denied both motions.[2]

14. On May 17, 2013, dissatisfied with Judge Hyman's refusal to stay the State Court Action and just three days before the rescheduled foreclosure sale of the Property, the Debtor filed its voluntary petition for Chapter 11 relief.

15. Based upon the Final Judgment accruing interest at the statutory rate, there was, as of the Petition Date, due and owing OB Real Estate the sum of $1,583,118.45.[3]

---

[2] The emergency motion for stay filed in the Adversary Proceeding also requested an order declaring that the State Court lacked Jurisdiction to act at any time on or after February 25, 2013 as the *Order Denying Removal, and Declaratory Relief and (2) Sanctioning Attorney* simply stated that removal was denied without specifically stating that the State Court Action was remanded. Judge Hyman denied this request, clarifying on the record that the State Court Action was remanded as of the date of entry of the Order Denying Removal.

[3] The amount due and owing as of the Petition Date was determined by performing the following calculation:

$1,558,376.55 [amount of Final Judgment] + (122 [days between Final Judgment and Petition Date]/365 X .0475 [rate of post-judgment interest] X $1,558,376.55 [amount of Final Judgment]) = $1,583,118.45 [total amount due under Final Judgment as of Petition Date].

{M0537102.1}

**LAW & ARGUMENT**

    A.    <u>This Case Was Filed in Bad Faith and Should be Dismissed Pursuant to 11 U.S.C. § 1112(b).</u>

It is well-settled in the Eleventh Circuit and elsewhere that a bankruptcy case filed in bad faith constitutes "cause" for dismissal of the case under Bankruptcy Code § 1112(b). *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393 (11th Cir. 1988); *In re Natural Land Corporation*, 825 F.2d 296 (11th Cir. 1987); *In re Albany Partners, Ltd.*, 749 F.2d 670 (11th Cir. 1984).

Following guidelines established by the Eleventh Circuit, bankruptcy courts throughout Florida have not hesitated to dismiss cases in which a debtor has filed its bankruptcy petition "to abuse the judicial process and the purposes of the reorganization provisions.…" *See In re Midway Inv., Ltd.*, 187 B. R. 383 (Bankr. S.D. Fla. 1995); *In re Panache Dev. Co.*, 123 B.R. 929, 932 (Bankr. S.D. Fla. 1991); *In re Growers Properties No. 56, Ltd.*, 117 B.R. 1015 (Bankr. M.D. Fla. 1990); *In re Terra of America Trading, Inc.*, 109 B.R. 516 (Bankr. S.D. Fla. 1989); *In re Randy Homes Corporation*, 86 B.R. 259 (Bankr. M.D. Fla. 1988); *In re Orange Park South P'ship*, 79 B.R. 79 (Bankr. M.D. Fla. 1987); *In re Lotus Inv., Inc.*, 16 B.R. 592 (Bankr. S.D. Fla. 1981).

In evaluating whether a petition has been filed in bad faith, the Eleventh Circuit and other courts have developed several "circumstantial factors" evidencing bad faith:

    a.    The debtor has only one asset;

    b.    The debtor has few unsecured creditors whose claims are small in relation to the claims of the secured creditors;

    c.    The debtor has few employees;

    d.    The property is the subject of a foreclosure action as a result of arrearages on the debt;

   e.  The debtor's financial problems involve essentially a dispute between the debtor and the secured creditors which can be resolved in the pending state court action; and

   f.  The timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights.

*Phoenix Piccadilly*, 849 F.2d at 1394-95.

  Judicial findings of bad faith are predicated on a mix of some, but not all, of these "circumstantial factors" of bad faith. *Id.* It is also well-settled that, if an evaluation of these factors supports a finding of bad faith, the debtor's case must be dismissed, irrespective of whether the debtor has equity in its property and the potential for a successful reorganization:

> Because the bankruptcy court found that a bad faith filing occurred, it properly did not change the consequences of that finding [i.e., dismissal of the case] simply because of the debtor's possible equity in the property or potential for successful reorganization. . . . Rather, as this Court stated in *In re Natural Land*:
>
>> 'the taint of a petition filed in bad faith must naturally extend to any subsequent reorganization proposal; thus, any proposal submitted by a debtor who filed his petition in bad faith would fail to meet section 1129's good faith requirement.' 825 F.2d at 298.
>
> The possibility of a successful reorganization cannot transform a bad faith filing into one undertaken in good faith.

*Phoenix Piccadilly*, 849 F.2d at 1395; *see also Lotus Investments*, 16 B.R. at 594 (Bankr. S.D. Fla. 1981) (secured creditor demonstrated bad faith justifying case dismissal and stay relief, despite the fact that the undisputed testimony showed equity in the debtor's property).

  The debtor has the burden of proof to show that its bankruptcy petition was filed in good faith. *In re Lotus Inv.*, 16 B.R. at 595; *In re RAD Properties, Inc.*, 84 B.R. 827, 829 (Bankr. M.D. Fla. 1988); *In re Sar-Manco, Inc.*, 70 B.R. 132, 139 (Bankr. M.D. Fla. 1986);

  As set forth above, all six of *Phoenix Piccadilly's* circumstantial factors of bad faith appear in this case and, accordingly, the Debtor's bankruptcy case should be dismissed.

"Chapter 11 is not intended to be used simply as a means of preventing a creditor from enforcing its claims." *In re Mildevco, Inc.*, 40 B.R. 191, 193 (Bankr. S.D. Fla. 1984). "The purpose of Chapter 11 reorganization is to assist financially distressed business enterprises by providing them with breathing space in which to return to a viable state." *In re Laguna Assocs. Ltd. P'ship*, 30 F.3d 734, 737 (6th Cir. 1994) (quoting *In re Winshall Settlor's Trust*, 758 F.2d 1136, 1137 (6th Cir. 1985)). The purpose of the Debtor's filing, on the other hand, is to frustrate OB Real Estate's efforts to enforce its remedies under the loan documents. "The bankruptcy laws were simply not intended to be used as a sword by the rapacious." *In re Panache Dev. Co.*, 123 B.R. 929, 932 (Bankr. S.D. Fla. 1991).

In view of the history of this matter, the fact that the Debtor is a single or no asset entity, the fact that this is a two-party dispute, the fact that the Debtor filed this proceeding on the eve of the scheduled foreclosure sale (after several failed attempts to forum shop and misuse the bankruptcy process), this Court should dismiss this Chapter 11 case as a bad faith filing.

  B. <u>In the Alternative, Stay Relief Should Be Granted Pursuant to 11 U.S.C. § 362(d)(1).</u>

    1. <u>The Debtor's Bad Faith Filing Constitutes Cause for Stay Relief.</u>

It is well-settled that a bad-faith bankruptcy filing constitutes sufficient cause for relief from the automatic stay pursuant to Section 362(d)(1) of the Bankruptcy Code. *See Phoenix Piccadilly*, 849 F.2d at 1394; *Laguna Assocs.*, 30 F.3d at 737; *In re Star Trust*, 237 B.R. 827, 833 (Bankr. M.D. Fla. 1999); *In re RAD Properties, Inc.*, 84 B.R. at 829 (Bankr. M.D. Fla. 1988); *In re Lotus Inv.*, 16 B.R. 592, 595-96 (Bankr. S.D. Fla. 1981).

The tests for bad faith are the same for both dismissal and for stay relief. *Phoenix Piccadilly*, 849 F.2d at 1394. As demonstrated above, the Debtor's bankruptcy filing under the circumstances of this case is a classic bad-faith filing. Thus, in the alternative, OB Real Estate requests relief from the automatic stay to proceed with the State Court Action.

{M0537102.1}

        2.      <u>The Debtor's Lack of Sufficient Income to Service Its Obligation to OB Real Estate Constitutes Cause for Relief from Stay.</u>

Bankruptcy courts have found "cause" to grant stay relief when it is clear that the debtor's income is insufficient to make loan payments. *See In re Carco P'ship*, 113 B.R. 735, 739 (Bankr. M.D. Fla. 1990) (relief from stay granted where debtor could only make monthly interest payments at contract rate but not at default rate); *In re Yanks*, 37 B.R. 394, 399 (Bankr. S.D. Fla. 1984) (stay relief granted where cash flow indicated debtor could not pay interest on outstanding promissory notes); *In re F&M Enterprises of Manatee County, Inc.*, 29 B.R. 115 (Bankr. M.D. Fla. 1983) (stay relief granted where maximum net monthly income of debtor could not service mortgage); *In re Polay*, 66 B.R. 543, 544 (Bankr. E.D. Pa. 1986) ("[T]he continued failure to tender periodic payments to a secured creditor under the terms of an underlying loan agreement may constitute 'cause' for relief under 11 U.S.C. 362(d)(1).").

Here, the Debtor is a dissolved limited liability company with no income. As the Debtor lacks sufficient income or other assets to fund a Chapter 11 plan, cause exists to grant OB Real Estate relief from stay.

        3.      <u>Additional Factors Constitute Cause for Relief from Stay.</u>

The following additional factors constitute cause for relief from stay:

    (a)    The Debtor defaulted under the loan documents; and

    (b)    The Debtor defaulted under the Forbearance Agreement;

    (c)    The Debtor has, in violation of the underlying loan documents, transferred its sole asset—the Property—to a third party; and

    (d)    TransAmerican Comercial, Ltd. continues to enjoy the use and possession of the Property, perhaps subjecting it to waste and/or depreciation, without compensating OB Real Estate therefor.

        C.      <u>In the Alternative, Stay Relief Should Be Granted Pursuant to 11 U.S.C. § 362(d)(2).</u>

Section 362(d)(2) provides this Court with authority to grant relief from the automatic stay where (a) "the debtor does not have any equity in the property" and (b) "such property is not necessary to an effective reorganization."

In the present matter, the Debtor has no equity in the Property as it has transferred the same to a third party.

In *United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 375, the Supreme Court described the second prong of Section 362(d)(2) as follows:

> Once the movant under § 362(d)(2) establishes that he is an undersecured creditor, it is the burden of the debtor to establish that the collateral is "necessary to an effective reorganization." What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property would be needed for it; but the property is essential for an effective reorganization *that is in prospect*. This means, as many lower courts, including the en banc court in this case, have properly said, that there must be "a reasonable possibility of a successful reorganization within a reasonable time."

*Timbers*, supra, 484 U.S. at 375 (internal citations omitted) (emphasis in original).

In the present matter, the Debtor is a dissolved limited liability company with no income. Accordingly, there is no reasonable possibility of a successful reorganization within a reasonable time, and it is appropriate for this Court to grant relief from stay pursuant to Section 362(d)(2).

> D. <u>In the Event that the Court Determines that the Automatic Stay Does Not Apply to the Property, Entry of a Comfort Order is Appropriate.</u>

Prepetition, the Debtor transferred its interest in the Property to TransAmerican Comercial, Ltd. To the extent that this Court determines that the Property is not property of the estate, OB Real Estate requests the entry of a comfort order confirming the inapplicability of the automatic stay.

Comfort orders are routinely entered to clarify concerns regarding the scope and extent of the automatic stay. In *In re Hill*, 364 B.R. 826, 828 (Bankr. M.D. Fla. 2007), the bankruptcy court explained the role of comfort orders as follows:

> Comfort orders serve a valuable purpose. The orders are entered primarily for a third party's benefit, often to help a sister state court attempting to determine whether it can proceed with a pending action, such as a foreclosure. The orders merely reiterate what has already occurred by operation of law. Comfort orders also protect creditors "from potential ramifications of acting in violation of the automatic stay by obtaining a cloak of cover from the court."
>
> Courts traditionally have exercised broad discretion in determining whether to enter comfort orders. The power to issue comfort orders is encompassed within Section 105 of the Bankruptcy Code, which supplies bankruptcy courts with the authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code.

*Hill*, 364 B.R. 826, 828 (internal citations omitted).

It is well-settled that the automatic stay does not enjoin foreclosure against property not owned by the debtor, even if the debtor is liable for the underlying obligation pursuant to a guaranty. 11 U.S.C. §§ 362, 541; *Saratoga Group, Ltd. v. Peoples National Bank (In re Geris)*, 973 F.2d 318 (4th Cir. 1992) (automatic stay does not prevent foreclosure on deed of trust where real estate involved is not owned by debtor, even if debtor is liable for indebtedness underlying deed of trust); *Evercharged, Inc. v First Nationwide Mortgage Corp. (In re Evercharged, Inc.)*, 230 B.R. 891 (Bankr. SD. Ga. 1999) (stay did not apply, to prevent mortgagee from foreclosing on real property in which debtor no longer had any interest as of petition date, simply because foreclosure would potentially subject debtor to deficiency judgment); *Hudgins v. Life Savings Bank (In re Hudgins)*, 153 B.R. 441 (Bankr. E.D. Va. 1993) (automatic stay does not extend to bar foreclosure action on property owned by nondebtor partnership in which debtors were general partners); *FDIC v. Howard Shoreline Associates,* 183 B.R. 33 (Dist. Conn. 1995) (adopting magistrate judge's holding that bankruptcy filing by partner, who was guarantor of

{M0537102.1}

note securing mortgage, did not prevent vesting of mortgaged partnership property in FDIC); *see also In re International Supply Corp. of Tampa, Inc.*, 72 B.R. 510, 511 (Bankr. M.D. Fla. 1987) (automatic stay does not apply as property is not property of the estate).

In the event that this Court determines that the Property is not property of estate, OB Real Estate respectfully requests the entry of an order confirming the inapplicability of the automatic stay.

E.  **In the Unlikely Event that this Court Declines to Dismiss this Case or Grant Stay Relief, An Order for Adequate Protection is Necessary.**

In the unlikely event that this Court declines to dismiss this bankruptcy proceeding or, alternatively, afford OB Real Estate stay relief, OB Real Estate requests that this Court enter an Order, pursuant to 11 U.S.C. §§ 361 and 362, conditioning the continued effectiveness of the stay upon the Debtor making adequate protection payments, maintaining insurance in compliance with the underlying loan documents, paying all post-petition property taxes as they become due and affording such other and further relief as is necessary to adequately protect OB Real Estate.

WHEREFORE, OB Real Estate respectfully requests that the Court enter an order: (i) dismissing this Chapter 11 case as a bad faith filing or, alternatively, granting OB Real Estate relief from stay to exercise its rights against the Property, or, alternatively, determining the stay is inapplicable or, alternatively, affording adequate protection; (ii) imposing sanctions for this bad faith filing and awarding OB Real Estate its attorneys fees; and (iii) granting such other and further relief as the Court deems just and proper.

Dated:  May 20, 2013

{M0537102.1}

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

Respectfully Submitted,

JONES WALKER LLP
  *Attorneys for OB Real Estate Holdings 1732, LLC*
201 Biscayne Blvd., Suite 2600
Miami, Florida 33131
Email: *sdrobny@joneswalker.com*
Telephone: (305) 679-5700
Facsimile: (305) 679-5710

By:   */s/ Stephen P. Drobny*
         Stephen P. Drobny
         Florida Bar No. 55732

**[Certificate of Service to be Filed Separately]**

{M0537102.1}