# EXHIBIT A

# PROMISSORY NOTE

**$1,000,000.00**

**West Palm Beach, FL**
**March 30, 2007**

FOR VALUE RECEIVED, the undersigned, as Maker, promises to pay to OptimumBank, a Florida banking corporation, at its offices at 2477 East Commercial Boulevard, Fort Lauderdale, FL 33308 (the "Payee") or such other place as Payee may from time to time designate, the principal sum of **ONE MILLION AND 00/100 DOLLARS ($1,000,000.00)** together with interest thereon from the date hereof until **April 1 2032**, as follows: On the date hereof, Maker has paid to Payee, in advance, all of the interest that is to accrue on the outstanding principal balance of this Note at an interest rate of **seven and three-quarter percent (7.75%)** per annum from the date hereof through **April 1, 2007**. Commencing **May 1, 2007** and on the 1st day of each and every month thereafter through and including **April 1, 2032**, Maker shall pay to the holder hereof equal monthly installments of principal and interest thereon, based on a **twenty-five (25) year amortization** of the full amount of this Note and an interest rate of **seven and three-quarter percent (7.75%)** per annum, in the initial amount of $7,553.30 **dollars.**

On **April 1, 2010** and on the 1st day of **April** each year thereafter (each is a "Change Date"), the interest rate shall be changed to a new fixed interest rate, calculated by adding **four and two-quarter percentage points (4.25%)** to the Current Index (defined hereinafter). The Payee will then round up the result of this addition to the nearest one-eighth of one percentage point (0.125%). The "Index" is the weekly average yield on United States Treasury Securities adjusted to a constant maturity of two (2) years as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before the Change Date, is the "Current Index". Notwithstanding the foregoing, the interest rate will never be less than **seven and two-quarter percent (7.25%).**

Payee will determine the amount of the new monthly payment, as of the applicable Change Date, that would be sufficient to repay, on **April 1 2032**, the unpaid principal in full at the new interest rate in substantially equal payments. The result of this calculation will be the amount of Maker's new monthly payment. The new interest rate will become effective on the applicable Change Date. Maker will pay the amount of the new monthly payment on the first monthly payment date after the applicable Change Date and on every monthly payment date thereafter until the next ensuing Change Date at which time the interest rate and the amount of the monthly payment shall change again as provided hereinabove. On **April 1 2032**, (the "Maturity Date"), the unpaid principal balance, together with accrued unpaid interest thereon, and any other amounts due under this Promissory Note or the Mortgage (defined hereinafter) shall be due and payable. The Payee will deliver or mail to Maker notice of any changes in the interest rate and in the amount of the payment before the first monthly payment date after the applicable Change Date. Monthly Payments under this Note shall be calculated based on a 360-day year with twelve 30-day months; provided, however, interest with respect to any payments due hereunder for periods of time which are less than one month shall be calculated by multiplying the actual number of days elapsed in the period for which interest is being calculated by a daily rate based on a 360-day year.



In addition to the monthly payments of principal and interest as provided hereinabove, Maker shall also be required to make monthly payments to the Payee to be held in escrow for payment of real estate taxes and hazard and premises liability insurance, including but not limited to coverage for fire, flooding and windstorm (hereinafter, the "Escrow"). The monthly Escrow payments for real estate taxes shall represent one-twelfth (1/12) of the estimated real estate taxes on the real property located at **525 South Flagler Drive, Unit CCU3A2, CCU3B2 and CCU3C2 (5th Floor) West Palm Beach, FL 33401**. Payments shall be applied first to pay all outstanding costs, including the Escrow, second to pay all unpaid interest and thereafter to the principal indebtedness.

This Note is secured by a mortgage deed and security agreement (the "Mortgage") of even date herewith from Maker to Payee, which Mortgage grants a lien on certain real estate and personal property located in **Palm Beach County, Florida**, more particularly described therein, a collateral assignment of rents, UCC-1 financing statements and such other documentation as required by Payee, all of the foregoing, together with this Note, being hereinafter collectively referred to as the "Loan Documents".

Failure of Maker to pay any installment of principal or interest as required herein on the date upon which such payment becomes due shall constitute a default hereunder. Any default or event which by the terms of any mortgage securing this Note or any loan agreement or other document executed in connection herewith constitutes a default thereunder shall also constitute a default hereunder. In the event of any such default, the holder of this Note may at its option, after the expiration of a 10-day grace period, declare all unpaid indebtedness evidenced by this Note and any modifications hereof immediately due and payable without notice, anything contained in any instrument securing the indebtedness evidenced hereby or in any related instrument to the contrary notwithstanding. Failure at any time to exercise this option shall not constitute a waiver of the right to exercise the same at any other time. In the event of the acceleration of this Note by reason of default, any unearned interest on the principal precipitated to maturity will be eliminated.

During the period commencing on the date hereof and ending on the **third** anniversary of said date (the "Prepayment Penalty Period"), Maker shall pay Payee, in the event Maker prepays the principal balance due under this Note, in whole or in part, a sum equal to **two percent (2.0%)** of any partial or full prepayment of principal so made (the "Prepayment Penalty"). Payee shall not be obligated to accept any partial or full prepayment of principal due under this Note during the Prepayment Penalty Period unless and until Maker pays the Prepayment Penalty applicable to such prepayment. After the expiration of the Prepayment Penalty Period, Maker may prepay the principal amount outstanding in whole at any time without premium or penalty or in part without premium or penalty and at times as hereinafter provided. The Payee may require that any partial prepayment (i) be made on the date monthly installments are due; and (ii) be in the amount of that part of one or more monthly installments which would be applicable to principal. Any partial prepayment shall be applied against the last due installment or installments of principal and shall not postpone the due date of any subsequent monthly installments or change the amount of such installment unless the Payee shall otherwise agree in writing.

While in default and if unpaid after maturity, the outstanding principal shall bear interest at the highest lawful rate, payable monthly on the first day of each month thereafter. In the event that there is no limitation on the rate of interest that may be charged to Maker, twenty-four and one half percent (24.5%) per annum shall be deemed to be the highest lawful rate. Should it



become necessary to collect this Note through an attorney, then all parties hereto, whether as Maker, endorser or guarantor, each jointly and severally agree to pay all reasonable costs of collecting this Note including reasonable attorneys' (including paralegals') fees and appellate attorneys' (including paralegals') fees, whether collected by suit or otherwise and in connection with all proceedings including post-judgment proceedings.

Maker shall pay to the holder hereof a late charge equal to five percent (5%) of any amount not received by the holder hereof within ten (10) days after such amount is due irrespective of the length of any grace period of longer duration provided herein or in any document executed in connection herewith or collateral hereto. In addition, if any check presented by Maker to pay amounts due under this Note is dishonored by the issuing bank or if it is returned by Payee because it is incomplete, Maker shall pay Payee a reasonable fee for each such returned check. This fee shall be assessed in addition to any other applicable late charge and said fee will not constitute interest.

The Payee is given the right of setoff against all deposits, accounts, credits, and other property of each Maker, endorser, surety, guarantor or accommodation party of this Note (hereinafter referred to collectively as the obligors and each individually, as an "Obligor"), now or hereafter coming into the control, custody or possession of the Payee, whether for the expressed purpose of being used by the Payee as collateral, or for any other purpose, and upon any balance or balances to the credit of any accounts, including trust and agency accounts maintained with the Payee by any of the Obligors, and the Obligors agree to deliver to the Payee additional collateral for the loan as shall be satisfactory to the Payee.

The Maker hereby waives presentment, demand for payment, protest and notice of nonpayment and of protest and any and all other notices and demands whatsoever.

The Maker hereof and all endorsers or guarantors of this Note now, or at any time liable, whether primarily or secondarily, for the payment of the indebtedness evidenced hereby, for themselves, their heirs, legal representatives, successors and assigns respectively, hereby expressly waive presentment for payment, protest and demand, notice of protest, demand and dishonor and non-payment of this Note, and diligence in collection, and consent to any and all extensions and renewals of such payments or any part thereof without notice, that may be extended by Payee, and further consent that the real or collateral security, or any part thereof, for this Note may be released by Payee, or the performance of the obligations of the Maker under any Loan Documents may be waived, or other indulgence granted by Payee, whether the same is granted to the Maker or any subsequent owner of the property which is security for the payment hereof, all without in any way modifying, altering, releasing, affecting, limiting or impairing their respective liability or the lien of the Mortgage, and to the extent permitted by law, the Maker does hereby waive and release all rights of redemption, valuation, appraisement, stay of execution, notice of election to mature or to declare due the whole of the indebtedness evidenced hereby, and each does hereby agree to pay reasonable attorneys' fees and expenses of collection (including appellate fees and expenses) in the event that this Note is placed in the hands of any attorney for collection or suit is brought thereon.

Notwithstanding any provision in this Note or in any instrument now or hereafter relating to or securing the within indebtedness, in the event that the total liability for payments of interest and payments in the nature of interest including, without limitation, all charges, fees, exactions or other sums which may at any time be deemed to be interest for any reason whatsoever, result in



an effective rate of interest which for any interest payment period exceeds the limit imposed by the usury laws of the jurisdiction governing this Note, all sums in excess of those lawfully collectible as interest for the period in question shall, without further agreement or notice by, between, amongst or to any of the parties hereto, be applied to the reduction of principal upon receipt of such sums by the holder hereof, with the same force and effect as though the Maker had specifically designated such excess sums to be so applied to the reduction of principal and the holder had agreed to accept such sums as a premium-free prepayment of principal; provided, however, that the holder of this Note may, at any time and from time to time, elect, by notice in writing, to waive, reduce or limit the collection of any sums in excess of those lawfully collectible as interest rather than accept such sums as a prepayment of principal.

In the event: (i) of any transfer, sale, conveyance, agreement for sale or deed, lease containing an option to purchase, or the term of which exceeds two (2) years, pledge or hypothecation of all or any portion of the property (the "Property") encumbered by the mortgage securing this Note (the "Mortgage") or any legal, equitable or beneficial interest therein; (ii) of any assignment of all or any portion of the rents from the Property; (iii) of a change in the ownership of the Property directly, indirectly, indirectly or by operation of law; or (iv) any mortgage is entered into in connection with or with respect to the Property (except as expressly permitted in the Mortgage) without the prior written consent of the Payee and the assumption in regular form of law by the grantee of the obligations to Payee created hereby and by the Mortgage, then, in any of such events, the entire indebtedness evidenced hereby shall, at the option of Payee become immediately due and payable without prior notice to Maker, and Payee may invoke any of the remedies provided for in this Note, the Mortgage, at law or in equity. Payee may withhold its consent in its absolute and sole discretion and with or without any reason whatsoever. In the event Payee grants its consent, it may condition such consent upon any matter whatsoever including, without limitation, those matters set forth in the Mortgage. In no event shall title to the mortgaged property be conveyed or transferred to, or otherwise vested in, any party other than the Maker without the written consent of the Payee. For purposes of this paragraph, the following shall constitute a transfer by the Maker and a default under this Promissory Note and the Loan Documents: (a) if Maker is a corporation, (i) the transfer of stock of Maker or any stockholder of Maker (whether such purported transfer shall be by direct transfer by such stockholder, the result of encumbrance of such stock by such stockholder or the result of action by any party against such stockholder), or (ii) the issuance of additional stock of Maker after the date hereof; (b) if Maker is a partnership or joint venture (i) the transfer of any partnership or joint venture interest or any partner (general or limited) or joint venture, or (ii) if any new partners (limited or general) or joint ventures are admitted to Maker; and (c) if Maker is a limited liability company, (i) the transfer of any membership interest of any member or (ii) if any new members are admitted to Maker.

This Note, and any other document or agreement executed in connection with this Note, shall be governed by and interpreted solely with the laws of the State of Florida.

Wherever in this Note one of the parties to it is named or referred to, the heirs, legal representatives, successors and assigns of that party shall be included, provided that the foregoing shall not be deemed to constitute permission to transfer the Property which is otherwise restricted by the Mortgage. All covenants and agreements contained in this Note by or on behalf of Maker or by or on behalf of Payee shall bind and inure to the benefit of their respective heirs, legal representatives, successors and assigns whether so expressed or not.



Wherever used herein, the terms "holder", "maker" and "payee" shall be construed in the singular or plural, as the context requires or permits. If Maker consists of more than one person or entity, the liability of each person or entity comprising the Maker shall be joint and several.

This Note may not be changed or discharged orally, but only by a writing signed by the party who is the owner and holder of this Note.

THE UNDERSIGNED WAIVES THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, ANY ASPECT OF THE TRANSACTION IN CONNECTION WITH WHICH THIS DOCUMENT IS BEING GIVEN OR ANY DOCUMENT EXECUTED OR DELIVERED IN CONNECTION WITH SUCH TRANSACTION. THIS WAIVER IS KNOWINGLY, INTENTIONALLY AND VOLUNTARILY MADE BY THE UNDERSIGNED, AND THE UNDERSIGNED ACKNOWLEDGES THAT NO ONE HAS MADE ANY REPRESENTATIONS OF FACT TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANYWAY TO MODIFY OR NULLIFY ITS EFFECT.    THE UNDERSIGNED FURTHER ACKNOWLEDGES HAVING BEEN REPRESENTED IN CONNECTION WITH THE TRANSACTION WITH RESPECT TO WHICH THIS DOCUMENT IS BEING GIVEN AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, SELECTED BY THE UNDERSIGNED'S OWN FREE WILL, AND THAT THE UNDERSIGNED HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH SUCH COUNSEL. THE UNDERSIGNED FURTHER ACKNOWLEDGES HAVING READ AND UNDERSTOOD THE MEANING AND RAMIFICATIONS OF THIS WAIVER PROVISION.

MAKER:

TP5, LLC
a Florida limited liability company

By: _____
JEFFREY M. SISKIND
Managing Member

THE DOCUMENTARY STAMP TAX REQUIRED TO BE PAID IN CONNECTION WITH THE INDEBTEDNESS EVIDENCED HEREBY HAS BEEN PAID AND PROPER STAMPS HAVE BEEN AFFIXED TO THE MORTGAGE WHICH SECURES THIS NOTE. THIS LEGEND IS AFFIXED IN ACCORDANCE WITH SECTION 201.01, FLORIDA STATUTES.

# EXHIBIT B

CFN 20070166209
OR BK 21592 PG 1935
RECORDED 04/05/2007 15:14:15
Palm Beach County, Florida
AMT 1,000,000.00
Deed Doc 3,500.00
Intang 2,000.00
Sharon R. Bock, CLERK & COMPTROLLER
Pgs 1935 - 1957; (23pgs)

This Instrument prepared by:
Carrie Goldstein, Esq.
2477 East Commercial Boulevard, #102
Fort Lauderdale, FL 33308

# MORTGAGE DEED AND
# SECURITY AGREEMENT

THIS MORTGAGE DEED and SECURITY AGREEMENT executed this 30th day of March 2007, is by and between **TP5, LLC**, a Florida limited liability company, whose address is 525 South Flagler, Suite 200, West Palm Beach, FL 33401 (the "Mortgagor") and OptimumBank, a Florida banking corporation, whose address is 2477 East Commercial Boulevard, Fort Lauderdale, FL 33308 ("Mortgagee").

**WITNESSETH:**

That for good and valuable consideration, including, but not limited to, the aggregate sum of money named in the Promissory Note of even date herewith, in the original principal amount of **ONE MILLION AND 00/100 DOLLARS ($1,000,000.00)** (the "Promissory Note"), Mortgagor grants, bargains, sells, aliens, remises, releases, conveys and confirms to Mortgagee, in fee simple, the following described real estate, of which Mortgagor is now seized and possessed and in actual possession, situated in the County of **PALM BEACH**, state of Florida to-wit:

**Condominium Units CCU3A2, CCU3B2 and CCU3C2, TRUMP PLAZA OF THE PALM BEACHES, a Condominium, according to the Declaration of Condominium thereof, recorded in Official Records Book 4800, Page 457, with all exhibits and amendments thereof, Public Records of Palm Beach County, Florida, and any and all amendments thereto, together with an undivided interest in the common elements appurtenant thereto as set forth in said Declaration, TOGETHER with an undivided 16.93% interest in Unit No. CCU3 as set forth in the Declaration of Tenancy-In-Common Agreement for Commercial Unit Parking Facilities as recorded in Official Records Book 19010 Page 70, Public Records of Palm Beach County, Florida.**

TOGETHER WITH all structures and improvements now or hereafter on the land, and the fixtures attached to it, and all mechanical systems, appliances, equipment, fixtures, landscaping and appurtenances which are now or may hereafter pertain to or be used with, in or on the premises, though they be either detached or detachable.

TOGETHER WITH all easements, rights-of-way, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, all permits and governmental approvals, and all estates, rights, title, interest, privileges, liberties, tenements, hereditaments and appurtenances whatsoever, in any way belonging, relating or appertaining to any of the property described above, or which hereafter shall in any way belong, relate or be appurtenant to it, whether now owned or hereafter acquired by Mortgagor, and the reversion and reversions, remainder and

remainders, rents, issues, and profits of it, and all the estate, right, title, interest, property, possession, claim and demand whatsoever, at law as well as in equity, of Mortgagor of, in and to the same, including, but not limited to all judgments, awards of damages and settlements hereafter made resulting from condemnation proceedings or the taking of the mortgaged property or any part of it under the power of eminent domain, the alteration of the grade of any street, or for any damage (whether caused by any taking or otherwise to the mortgaged property or any part of it, or to any rights appurtenant to it) and all proceeds of any sales or other dispositions of the mortgaged property or any part of it (all of which, together with the land, the improvements, the rights, titles and interests described in this Mortgage, and any additional property hereafter acquired by Mortgagor and subject to the lien of this Mortgage or intended to be, is the "Mortgaged Property").

TOGETHER WITH a security interest in (i) all property, equipment, fixtures and improvements owned by Mortgagor affixed to or located upon the land; (ii) all articles of personal property and all materials delivered to the Mortgaged Property for use in any construction being conducted on it and owned by Mortgagor; (iii) all contract rights, general intangibles, actions and rights of action, including all rights to insurance proceeds; and, (iv) all proceeds, products, replacements, additions, substitutions, renewals and accessions of any of the foregoing. Mortgagor grants to Mortgagee a security interest in all fixtures, rights in action and personal property described in this Mortgage. This Mortgage is a self operative security agreement with respect to the property, but Mortgagor agrees to execute and deliver on demand any other security agreements, financing statements and other instruments as Mortgagee may request in order to confirm, perfect, preserve and maintain its security interest or to impose the lien or priority of this Mortgage more specifically upon any of the property. Mortgagor shall pay to Mortgagee, on demand, any expenses incurred by Mortgagee in connection with the preparation, execution and filing of any such documents. Mortgagee shall have, in addition to those rights and remedies specified in this Mortgage, all the rights and remedies of a secured party under the Uniform Commercial Code as enacted in the State of Florida.

TO HAVE AND TO HOLD the same, together with the tenements, hereditaments and appurtenances, unto Mortgagee, in fee simple.

AND MORTGAGOR covenants with Mortgagee that Mortgagor is indefeasibly seized of the Mortgaged Property in fee simple; that Mortgagor has full power and lawful right to convey the Mortgaged Property in fee simple as aforesaid; that it shall be lawful for Mortgagor at all times peaceably and quietly to enter upon, hold and occupy the Mortgaged Property; that the Mortgaged Property is free and clear of all other and prior and subordinate liens, assessments, judgments, taxes and encumbrances, except taxes for the current year which are not yet due and payable and those matters specifically set forth in this Mortgage and shall remain free and clear of those matters for so long as the indebtedness secured by this Mortgage remains outstanding; that Mortgagor will make all further assurances to perfect the fee simple title to Mortgaged Property in Mortgagor as may reasonably be required; and that Mortgagor does warrant the title to the Mortgaged Property and will defend the same against the lawful claims of all persons whomsoever.

2 of 18

PROVIDED ALWAYS that if the Mortgagor shall pay to the Mortgagee the sum of money aggregating ONE MILLION AND 00/100 DOLLARS ($1,000,000.00), evidenced by the Promissory Note, and due and payable in the manner specified in that instrument, together with interest as provided in it, and shall pay all other sums provided to be paid by this Mortgage, and shall perform, comply with and abide by the stipulations, agreements, conditions and covenants of the Promissory Note, of this Mortgage and of any other agreement or document executed in connection with this loan transaction (each a "Loan Document" and collectively, the "Loan Documents"), then this Mortgage and the estate created by this Mortgage shall cease and be null and void.

And the Mortgagor further covenants and agrees as follows:

1.  To pay all and singular the principal and interest and other sums of money payable by virtue of the Promissory Note and this Mortgage, promptly on the days respectively the same severally come due.

2.  Promptly to pay when due all and singular, each and every, taxes (including, without limitation, documentary stamp and intangible taxes), assessments, levies, water, sewer and waste charges, license fees, liabilities, obligations and encumbrances of every nature in connection with or with respect to this Mortgage, the Promissory Note or the Mortgaged Property, and to deliver to Mortgagee, on or before February 1, of each year, tax receipts evidencing the payment of all lawfully imposed real estate taxes upon the Mortgaged Property for the preceding calendar year; to deliver to Mortgagee receipts evidencing the payment of all liens for public improvements within thirty (30) days after same shall become due and payable, and to pay or discharge within thirty (30) days prior to the due date, any and all governmental levies that may be made on the Mortgaged Property, on this Mortgage or the Promissory Note or in any other way resulting from the indebtedness secured by this Mortgage. If the same shall not be promptly paid, the Mortgagee may, at any time either before or after delinquency, pay the same without waiving or affecting its option to foreclose or any right under this Mortgage, and every payment so made shall be secured by the lien of this Mortgage and shall bear interest from the date of it at the lower of (a) 24.5% per annum; or, (b) the maximum rate of interest permitted to be charged to Mortgagor under Florida law (the "Default Rate").

3.  To keep the buildings, fixtures, chattels, improvements and personal property now or hereafter on the Mortgaged Property and the fixtures and personal property contained in it, insured by a company or companies approved by the Mortgagee, with extended coverage and broad form coverage, against loss or damage by fire, flood, windstorm, lightning, hail, riot, vehicles, explosion, smoke, falling objects, collapse, breakage of glass, sprinkler leakage, water damage, vandalism and malicious mischief, theft and such other perils as Mortgagee may from time to time require in such amounts as Mortgagee may require and so that Mortgagee's interest is not subject to co-insurance, and the policy or policies shall contain a Standard Mortgagee Clause, provide for thirty (30) days prior written notice to Mortgagee of cancellation, be held by and be payable to Mortgagee, and, if requested by Mortgagee, include a waiver of subrogation clause. In the event of loss, Mortgagor shall give immediate notice by mail to Mortgagee and Mortgagee may make proof of loss if not made promptly by Mortgagor. Each insurance company concerned is hereby authorized and directed to make payments for such loss directly to



3 of 18



Mortgagee instead of either to Mortgagor or to Mortgagee and Mortgagor jointly. Mortgagee shall have the option to receive and apply all payments on account of the indebtedness secured by this Mortgage (and, in connection with it, Mortgagee shall have the right to settle, adjust and compromise any claims for loss, damage or destruction), or permit Mortgagor to receive or use all or any part of those payments, for any purposes without waiving or impairing the equity, lien or right under and by virtue of this Mortgage. If Mortgagor defaults in so insuring the Mortgaged Property or any part thereof or in so assigning and delivering the policies, at its option Mortgagee may effect such insurance from year to year and pay the premiums therefor, and any such sums advanced by Mortgagee shall bear interest, shall be paid and shall be secured as provided in Paragraph 2. Mortgagor shall maintain liability insurance with a company approved by Mortgagee in such amount as Mortgagee may require and Mortgagee shall be named an additional insured. Not less than thirty (30) days prior to the expiration of each policy furnished by Mortgagor under this paragraph, Mortgagor will deliver to Mortgagee a renewal policy or policies accompanied by evidence of payment satisfactory to Mortgagee. Each policy of insurance required under this Mortgage shall be non-cancelable without at least thirty (30) days advance written notice to Mortgagee. Mortgagor assigns and will deliver to Mortgagee all policies of insurance as additional security and in the event of a foreclosure of this Mortgage, the purchaser of the Mortgaged Property shall succeed to all rights of Mortgagor under all policies of insurance, including rights to proceeds and unearned premiums. Mortgagor shall maintain such additional insurance as may be necessary to meet and comply with all co-insurance requirements to the end that Mortgagor is not a co-insurer under any of the insurance policies. Mortgagee shall have the right to review the forms, coverages, amounts, and duration of such insurance policies from time to time and to require, upon giving Mortgagor thirty (30) days advance written notice thereof, that the forms, coverages, amounts, or duration of such policies be changed or modified so as to reasonably protect Mortgagee's interests. Mortgagor shall maintain such additional insurance covering such other risks as the Mortgagee may require in such amounts and forms as Mortgagee shall require.

4.    To keep the Mortgaged Property in good order and repair, to operate the Mortgaged Property in a first class manner, promptly to repair, replace or restore any part of the Mortgaged Property which may become damaged, destroyed, lost or unsuitable for use, not to remove, demolish or materially alter any buildings now or hereafter erected on the Mortgaged Property and to permit, commit and suffer no waste, impairment, abandonment or deterioration of the Mortgaged Property or any part of it, and upon the failure of Mortgagor to continuously keep the buildings and personal property on the Mortgaged Property in first class condition and repair. Mortgagee may demand any or all of the following in addition to any other remedies provided in this Mortgage, at law or in equity: the immediate repair or restoration of the Mortgaged Property, an increase in the amount of security, or the immediate repayment of the debt secured by this Mortgage. Mortgagee shall have the right from time to time upon reasonable notice to inspect the Mortgaged Property.

5.    Promptly to perform, comply with and abide by: (i) all present and future laws, ordinances, regulations and rules of any governmental authority affecting the Mortgaged Property; and, (ii) any restrictive covenants affecting the Mortgaged Property, and not suffer or permit any violations of them.



6.    Promptly to perform, comply with and abide by each and every stipulation, agreement, condition and covenant set forth in the Promissory Note, this Mortgage and any of the other Loan Documents, all at Mortgagor's sole cost and expense.

7.    To pay all and singular the costs, charges, and expenses, including reasonable attorneys' (including paralegals') fees (whether or not suit is instituted and in connection with all proceedings, including post judgment proceedings), incurred or paid at any time by Mortgagee because of the failure of Mortgagor to perform, comply with and abide by each and every stipulation, agreement, condition and covenant of the Promissory Note or this Mortgage, and every payment shall bear interest from the date of payment at the Default Rate.

8.    That if any action or proceeding shall be commenced to which the holder of this Mortgage is made a party, or in which it shall become necessary to defend or uphold the lien of this Mortgage, all sums paid by the holder of this Mortgage for the expense of any litigation to prosecute or defend the rights and liens created by this Mortgage or otherwise (including reasonable attorneys' and appellate attorneys' fees, which shall include paralegals' fees, in connection with all proceedings, including postjudgment proceedings, and regardless of the merits or outcome of those proceedings) shall be paid by Mortgagor, together with interest on it at the Default Rate, and any sum and the interest on it shall be a claim upon the Mortgaged Property and shall be deemed to be secured by this Mortgage and shall be payable by Mortgagor immediately upon demand by Mortgagee, and the failure of Mortgagor to do so shall constitute a default of the Promissory Note and this Mortgage.

9.    That acceptance of part payment of any installment of principal or interest or both, or of part performance of any covenant or delay for any period of time in exercising the option to mature the entire debt, shall not operate as a waiver of the right to exercise any option or act on any default, partial acceptance or any subsequent default.

10.    In the event of a default in any of the terms of this Mortgage, or the filing of a complaint or other form of pleading to foreclose this or any other mortgage or lien encumbering the Mortgaged Property or any portion of it, the Mortgagee shall immediately be entitled, as a matter of right and without regard to the value of the Mortgaged Property or solvency or insolvency of the parties, to the appointment (without notice to Mortgagor, which notice Mortgagor waives) of a Receiver of the Mortgaged Property, both real and personal, and of the rents, issues and profits of it, with the usual power of Receivers in those cases, and the Receiver may be continued in possession of the Mortgaged Property until the time of the sale of it, under any foreclosure, and until the confirmation of any sale by the Court, or until Mortgagee consents to his withdrawal. All expenses of the Receiver shall be payable by Mortgagor and those amounts shall be secured by this Mortgage. The foregoing is agreed to, in part, in recognition of the fact that a delay in the management, development, disposition or other activity involving the Mortgaged Property may substantially adversely affect Mortgagee's security.  **MORTGAGOR HEREBY SPECIFICALLY WAIVES THE RIGHT TO OBJECT TO THE APPOINTMENT OF A RECEIVER AS AFORESAID AND HEREBY EXPRESSLY CONSENTS THAT SUCH APPOINTMENT SHALL BE MADE AS AN ADMITTED EQUITY AND AS A MATTER OF ABSOLUTE RIGHT TO MORTGAGEE AND AGREES THAT THE SAME MAY BE DONE WITHOUT NOTICE TO MORTGAGOR.**

5 of 18



MORTGAGOR FURTHER AGREES THAT THE RECEIVER SHALL HAVE ALL RIGHTS CONFERRED BY LAW, AND, IF NOT CONFERRED BY LAW, THE RIGHT TO COMPLETE ANY CONSTRUCTION ALREADY COMMENCED ON THE PREMISES AND/OR TO MAKE NECESSARY REPAIRS TO KEEP THE MORTGAGED PROPERTY IN PROPER CONDITION DURING THE PERIOD OF RECEIVERSHIP.

11.    If foreclosure proceedings should be instituted on any mortgage superior or inferior to this Mortgage or if any foreclosure proceeding is instituted on any lien of any kind which affects the Mortgaged Property or any portion of it, Mortgagee may, at its option, immediately or thereafter declare this Mortgage and the indebtedness secured by this Mortgage due and payable. Any default on any mortgage superior or inferior to this Mortgage, including failure to pay any mortgage when due and in accordance with its terms or failure to abide by the terms of any mortgage, shall be deemed a breach of this Mortgage and Mortgagee, at its option, may immediately or thereafter declare this Mortgage and the indebtedness secured by this Mortgage due and payable.

12.    Any notice, statement, demand or other communication required or permitted to be given or made by either party under this Mortgage or under any other Loan Document shall be in writing and shall be deemed properly given and made if served personally or if sent by registered or certified mail, postage prepaid, return receipt requested, to the addresses first set forth above or at any other address as may from time to time be designated in writing in conformity with this Mortgage. Notice given by the attorney for any party shall be as effective as if given by that party.

13.    Mortgagor shall be in default under this Mortgage and the Promissory Note upon the happening of any of the following events, circumstances or conditions (each is an "Event of Default"), to wit: (a) If Mortgagor shall file a voluntary petition in bankruptcy or shall be adjudicated bankrupt or insolvent, or shall file any petition or answer seeking any reorganization, arrangement, composition, readjustment, liquidation, wage earner's plan, assignment for the benefit of creditors, receivership, dissolution or similar relief under any present or future Federal Bankruptcy Code or any other present or future applicable federal, state or other statute or law, or shall seek or consent to or acquiesce in the appointment of any trustee, receiver or liquidator of Mortgagor or all or any part of the properties of Mortgagor; or (b) if within ten (10) days after commencement of any proceeding against Mortgagor seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution, debtor relief or similar relief under any present or future Federal Bankruptcy Code or any other present or future federal, state or other statute or law, that proceeding shall not have been dismissed, or stayed on appeal; or (c) if within ten (10) days after the appointment, without the consent or acquiescence of Mortgagor, of any trustee, receiver, or liquidator of Mortgagor, or of all or any portion of the Mortgaged Property, that appointment shall not have been vacated or stayed on appeal or otherwise; or (d) if, within ten (10) days after the expiration of any stay, that appointment shall not have been vacated; or (e) if there are any attachments or garnishments issued against Mortgagor or any guarantor which are not discharged or bonded off within thirty (30) days after such issuance; or (f) if a judgment is entered against the Mortgagor or any guarantor which is not satisfied or bonded off within thirty (30) days after the rendition thereof; or (g) if an officer of Mortgagee determines that a



material adverse change has occurred in the financial condition of the Mortgagor from the condition set forth in the most recent financial statements of the Mortgagor furnished to the Mortgagee or from the condition of the Mortgagor as most recently disclosed to the Mortgagee in any manner; or (h) if Mortgagor fails to furnish annually to Mortgagee updated financial statements within the latter of 20 days following Mortgagee's written request, or ninety (90) days of the end of each calendar year, including a sworn itemized statement on all annual earnings and expenses of the Property, and copies of Federal Income Tax Returns within the latter of 20 days following Mortgagee's written request or forty five (45) days of submission of same to the IRS, all prepared in form and substance acceptable to Mortgagee; or (i) upon the death of any Mortgagor or guarantor or dissolution of any entity comprising the Mortgagor or any guarantor; or (j) the determination by the Mortgagee that any material warranty, representation, certification or statement of the Mortgagor or any guarantor pertaining to or in connection with the loan evidenced by this Mortgage (the "Loan") is not true; or (k) any breach of or failure to fulfill or carry out any of the covenants contained in this Mortgage, the Promissory Note or any of the Loan Documents; and 20 days' grace period after Mortgagee's written notice of non-monetary default; or (l) Mortgagor's filing for record, without the prior written consent of Mortgagee, which Mortgagee may grant or withhold in its sole discretion, of any notice limiting the maximum principal amount that may be secured by this Mortgage to an amount less than the limit set forth in the future advance clause in paragraph 16 of this Mortgage; or (m) any sale, transfer (whether voluntary or by operation of law), pledge, hypothecation or further encumbrancing of all or any part of the Mortgaged Property or any interest therein or any interest in Mortgagor, or the additional assignment of all or any part of the rents, income or profits arising therefrom, in either case without the prior written consent of Mortgagee, which Mortgagee may grant or withhold in its sole discretion; or (n) Mortgagor's failure to remove any involuntary lien on the Mortgaged Property or any part thereof within twenty (20) days after its filing, or the filing of any suit against the Mortgaged Property upon any claim or lien other than this Mortgage (whether superior or inferior to this Mortgage); or (o) Mortgagor's failure to comply, within ten (10) days, with a requirement, order or notice of violation of a law, ordinance, or regulation issued or promulgated by any political subdivision or governmental department claiming jurisdiction over the Mortgaged Property or any operation conducted on the Mortgaged Property (or, if such order or notice provides a time period for compliance, Mortgagor's failure to comply within such period), or, in the case of a curable noncompliance requiring longer than the applicable time period for its cure, Mortgagor's failure to commence to comply with said order or notice within said period or failure thereafter to pursue such cure diligently to completion; or (p) the issuance of any order by the State of Florida, or any subdivision, instrumentality, administrative board or department thereof declaring unlawful or suspending any operation conducted on the Mortgaged Property; or (q) the filing by the United States of America or any instrumentality thereof in any court of competent jurisdiction of any notice of intention to acquire under the power of eminent domain any estate less than an estate in fee simple in the entire Mortgaged Property, or the recording by the State of Florida, any instrumentality thereof or any other person with eminent domain powers, of a notice of taking of any estate less than an estate in fee simple in the entire Property; (r) if Mortgagor or any guarantor (each is an "Obligor") shall have concealed, transferred, removed, or permitted to be concealed or transferred or removed, any part of such Obligor's property with intent to hinder, delay or defraud any of such Obligor's creditors, or if any Obligor shall have made or suffered a transfer of any of such Obligor's properties which may be invalid under any bankruptcy,



7 of 18



fraudulent conveyance, preference or similar law, or if any Obligor shall have made any transfer of such Obligor's properties to or for the benefit of any creditor at a time when other creditors similarly situated have not been paid. Upon the occurrence of an Event of Default, this Mortgage shall be in default and the unpaid balance of the Promissory Note with all accrued interest on it and all monies secured by it shall, at the option of the Mortgagee, become immediately due and payable, and Mortgagee shall have any other remedies provided herein, in the Promissory Note, in any other Loan Document or as otherwise provided at law or in equity.

14.    If any of the sums of money referred to in this Mortgage or the Promissory Note are not promptly and fully paid after the same severally come due and payable, or if each and every stipulation, agreement, condition and covenants of the Promissory Note and this Mortgage, or any other Loan Document, is not duly performed and abided by, prior to the expiration of any applicable grace periods, the aggregate sum mentioned in the Promissory Note then remaining unpaid, with accrued interest, and all monies secured by this Mortgage, shall, at the option of Mortgagee, become due and payable forthwith or thereafter, as fully and completely as if all of the sums of money were originally stipulated to be paid on that day, anything in the Promissory Note, in this Mortgage or in any other Loan Document to the contrary notwithstanding; and thereafter, at the option of Mortgagee, without notice or demand, suit at law or in equity may be prosecuted as if all moneys secured by this Mortgage had matured prior to its institution.

15.    Mortgagor shall exhibit to Mortgagee written receipts establishing payment of any sums required to be paid under any mortgage or other lien obligation, no later than fifteen (15) days prior to the time that acceleration of any mortgage for delinquency of any other lien obligation could be declared for non-payment of it. Without limiting the foregoing, Mortgagor will keep and maintain the Mortgaged Property free from all liens of persons supplying labor and materials entering into the construction, modification or repair of the Mortgaged Property and if any liens shall be filed against the Mortgaged Property, Mortgagor agrees to discharge the same of record within ten (10) days after the same shall have been filed.

16.    That it is the intent of this Mortgage to secure payment of the Promissory Note and any other obligations of Mortgagor to Mortgagee under this Mortgage, whether the entire amount shall have been advanced to Mortgagor, at the date of this Mortgage or at a later date, and to secure any other amount or amounts that may be added to the indebtedness secured by this Mortgage under the terms of this Mortgage. The total amount of indebtedness secured by this Mortgage may decrease or increase from time to time, but the total unpaid balance so secured at anyone time shall not exceed a principal sum equal to 200% of the original principal amount of the Promissory Note, plus interest on it and any disbursements made for the payment of taxes, levies or insurance on the Mortgaged Property with interest on it; and this Mortgage shall secure any and all additional or further monies which may be advanced by Mortgagee to Mortgagor after the date of this Mortgage as if any additional or further advances were made on the date of this Mortgage, whether or not any future advances of money are evidenced by a note or notes executed by Mortgagor to Mortgagee, but any and all future advances secured by this Mortgage shall be made not more than twenty (20) years after the date of this Mortgage. Mortgagor shall not file a notice pursuant to Section 697.04, Florida Statutes (or any successor to it), limiting the right of Mortgagee to make any additional or further advances with priority as specified in this



Mortgage. Nothing contained in this Mortgage shall be deemed an obligation on the part of Mortgagee to make any future advances.

17.    That in the event the Mortgaged Property or any part of it shall be condemned or taken for public use under the power of eminent domain or shall be damaged or destroyed, Mortgagee shall have the right to demand that all damages awarded for the taking of or damage to the Mortgaged Property and all insurance proceeds shall be paid to Mortgagee, its successors or assigns, up to the amount then unpaid on this Mortgage and may be applied upon the payment or payments last payable under this Mortgage (and, if so applied, will not relieve Mortgagor of the obligation of paying subsequent payments when due). Mortgagor shall pay all reasonable legal fees (including both attorneys' and paralegals' fees at all tribunal levels and in connection with all proceedings, including post judgment proceedings), surveyor's charges and any other costs incurred by Mortgagee in connection with any condemnation proceeding or the full or partial destruction or damage to the Mortgaged Property which shall be due and payable upon demand of Mortgagee and any amounts shall be secured by this Mortgage together with interest from their due date until paid at the Default Rate. Mortgagor shall restore the Mortgaged Property to a complete and useable facility as expeditiously as possible after any casualty, regardless of whether or not the condemnation award or insurance proceeds are sufficient for restoration and regardless of the disposition of it.

18.    Mortgagor shall, within five (5) days from written demand by Mortgagee, execute and acknowledge, in form as shall be required by Mortgagee, any and all instruments reasonably requested by Mortgagee to effect, complete, perfect, preserve, continue or evidence the obligation of Mortgagor under the Promissory Note and the lien of this Mortgage including, without limitation, an estoppel certificate and waiver of defenses if there are none, duly acknowledged, setting forth the amount of principal and interest then outstanding on the Promissory Note and the general status of the Mortgage, and upon Mortgagor's failure, refusal or neglect to do so after written demand, Mortgagee shall have the right to execute any such documents in the name of Mortgagor. Furthermore the failure of Mortgagor to make, acknowledge and deliver any instrument within the time aforesaid shall constitute a default and a breach of this Mortgage and shall entitle the holder of this Mortgage to declare all of the unpaid principal balance immediately due and payable.

19.    It is specifically agreed that time is of the essence of this instrument and that no waiver of any obligation under this Mortgage or of the obligation secured by this Mortgage shall at any time thereafter be held to be a waiver of the terms of this Mortgage or of the instrument secured by this Mortgage.

20.    If Mortgagor defaults in the performance of any of Mortgagor's covenants and agreements contained in this Mortgage, or any superior or inferior mortgage, Mortgagee shall have the right at any time, and without waiving or affecting its option to foreclose or any other rights under this Mortgage, to pay all sums of money or to render any performance as may be necessary or required to cure the default, and all sums paid shall be immediately due and payable from Mortgagor to Mortgagee together with interest on it at the Default Rate, and any and all costs, charges, attorneys' (including paralegals') fees (whether or not suit is instituted and in connection with all proceedings, including post-judgment proceedings), and other expenses



incurred or expended in connection with the payment or performance, and this Mortgage shall stand as security for it, and any sums paid shall be deemed an indebtedness in addition to the indebtedness secured by this Mortgage.

21.    Whenever in this Mortgage one of the parties to it is named or referred to, the heirs, legal representatives, successors and assigns of that party shall be included provided that the foregoing shall not be deemed to constitute permission to transfer the Mortgaged Property which is otherwise restricted by paragraphs 23 and 28 of this Mortgage. All covenants and agreements contained in this Mortgage by or on behalf of Mortgagor or by or on behalf of Mortgagee shall bind and inure to the benefit of their respective heirs, legal representatives, successors and assigns whether so expressed or not. Whenever the singular or plural number or masculine or feminine or neuter gender is used in this Mortgage, it shall equally include the other.

22.    No right, power or remedy conferred upon or reserved to Mortgagee by this Mortgage is intended to be exclusive of any other right, power or remedy, but each and every right, power and remedy shall be cumulative and concurrent and shall be in addition to any other right, power and remedy given under this Mortgage or now or hereafter existing at law or in equity or by statute.

23.    Mortgagor shall not grant any other lien or mortgage on all or any part of the Mortgaged Property or any interest therein, nor make any further assignment of the leases and rentals of the Mortgaged Property, without the prior written consent of Mortgagee, which Mortgagee may grant or withhold in its sole discretion; any such unpermitted lien or mortgage or assignment by Mortgagor shall entitle Mortgagee to accelerate the maturity of the Loan and foreclose this Mortgage. Any such other lien or mortgage or assignment shall be junior to this Mortgage and to all permitted tenancies now or hereafter affecting the Mortgaged Property or any portion thereof and shall be subject to all renewals, extensions, modifications, releases, interest rate increases, future advances, changes or exchanges permitted by this Mortgage, all without the joinder or consent of such junior lienholder or mortgagee or assignee and without any obligation on Mortgagee's part to give notice of any kind thereto. Mortgagor shall maintain in good standing any other mortgage or encumbrance to secure debt affecting any part of the Mortgaged Property from time to time and shall not commit or permit or suffer to occur any default thereunder, nor shall Mortgagor accept any future advance under or modify the terms of any such mortgage or encumbrance which may then be superior to the lien of this Mortgage. Except for encumbrances permitted by Mortgagee, Mortgagor shall not commit or permit or suffer to occur any act or omission whereby any of the security represented by this Mortgage shall be impaired or threatened, or whereby any of the Mortgaged Property or any interest therein shall become subject to any attachment, judgment, lien, charge or other encumbrance whatsoever, and Mortgagor shall immediately cause any such attachment, judgment, lien, charge or other encumbrance to be discharged or otherwise bonded or transferred to other security. Mortgagor shall not directly or indirectly do anything or take any action which might prejudice any of the right, title or interest of Mortgagee in or to any of the Mortgaged Property or impose or create any direct or indirect obligation or liability on the part of Mortgagee with respect to any of the Mortgaged Property.

10 of 18



24.     Mortgagor shall not cause or permit or suffer to occur any of the following events without the prior written consent of Mortgagee, which Mortgagee may grant or withhold in its sole discretion, and if any of the same shall occur without such consent, then Mortgagee shall have the right to accelerate the maturity of the Loan and foreclose this Mortgage: (a) if all or any portion of the legal or equitable title to all or any portion of the Mortgaged Property or any interest therein shall in any manner whatsoever be sold, conveyed or transferred, either voluntarily or by operation of law; (b) if Mortgagor shall enter into any lease or modify or amend any existing lease or other arrangement with any third party regarding the use or possession by such third party of all or any portion of the Mortgaged Property (provided, however, Mortgagor shall be permitted, without Mortgagee's written consent, to enter into any lease with respect to the Mortgaged Property without Mortgagee's prior written consent if the lease is in the ordinary course of business at rentals reasonable equivalent to the market rate therefor), or any interest therein shall in any manner whatsoever be sold, conveyed or transferred, either voluntarily or by operation of law; (c) in the case of any portion of the Mortgaged Property owned by a corporation (or a partnership or joint venture or trust or other business entity), if any stock or partnership interest (including, without limitation, any transfer of stock in a corporate partner) or joint venture interest or beneficial interest in such owner shall be transferred in any manner, or if such stock or partnership interest or joint venture interest or beneficial interest shall be assigned, pledged, hypothecated, mortgaged or otherwise encumbered; or (d) if Mortgagor shall pay, repay or distribute any funds to any guarantor of the Loan or any other person directly or indirectly related to Mortgagor (such as a stockholder, partner or beneficiary) (provided, however, Mortgagor shall be permitted to make any such payments, repayments or distributions of funds to the extent that the same do not materially, adversely affect Mortgagor's ability to repay the Loan). For purposes of this paragraph, the following shall constitute a transfer by the Mortgagor and a default under this Mortgage and the Loan Documents: (a) if Mortgagor is a corporation, (i) the transfer of stock of Mortgagor or any stockholder of Mortgagor (whether such purported transfer shall be by direct transfer by such stockholder, the result of encumbrance of such stock by such stockholder or the result of action by any party against such stockholder), or (ii) the issuance of additional stock of Mortgagor after the date hereof (b) if Mortgagor is a partnership or joint venture, (i) the transfer of any partnership or joint venture interest of any partner (general or limited) or joint venturer, (ii) if any new partners (limited or general) or joint venturers are admitted to Mortgagor; and (c) if Mortgagor is a limited liability company, (i) the transfer of any membership interest of any member, or (ii) if any new members are admitted to Mortgagor.

25.     That if, from any circumstances whatever, fulfillment of any provision of this Mortgage, the Promissory Note or any other instrument securing or evidencing the loan secured by this Mortgage shall transcend the limit of validity prescribed by the usury statute or any other law of the State of Florida, then ipso facto the obligation to be fulfilled shall be reduced to the limit of the validity so that in no event shall any exaction, payment, reservation or charge be possible under this Mortgage, the Promissory Note or any other instrument that is in excess of the limit of the validity, but that obligation shall be fulfilled to the limit of the validity. In no event shall the Mortgagor be bound to pay for the use or detention of the money loaned and secured by this Mortgage, or the Mortgagee's forbearance in collecting same, interest, or payments in the nature of interest of more than the maximum rate lawfully collectible in accordance with the applicable laws of the State of Florida; the right to demand, charge or reserve any excess shall be and is waived. The provisions of this paragraph shall control every

11 of 18



other provision of this Mortgage, the Promissory Note and any other undertaking, agreement or document evidencing, supporting or securing the loan secured by this Mortgage.

26.     This Mortgage is a "security agreement" and creates a "security interest" in favor of Mortgagee as a "secured party" with respect to all property included in the Mortgaged Property which is covered by the Uniform Commercial Code. Upon default under the Promissory Note, this Mortgage or any other Loan Document, Mortgagee may at its option pursue any and all rights and remedies available to a secured party with respect to any portion of the Mortgaged Property so covered by the Uniform Commercial Code, or Mortgagee may at its option proceed as to all or any part of the Mortgaged Property in accordance with Mortgagee's rights and remedies in respect of real property. Mortgagor and Mortgagee agree that the mention of any portion of the Mortgaged Property in a financing statement filed in the records normally pertaining to personal property shall never derogate from or impair in any way their declared intention that all items of collateral described in this Mortgage are part of the real estate encumbered hereby to the fullest extent permitted by law, regardless of whether any such item is physically attached to the improvements or whether serial numbers are used for the better identification of certain items of equipment. Specifically, the mention in any such financing statement of (a) the rights in or the proceeds of any insurance policy, (b) any award in eminent domain proceedings for a taking or for loss of value, (c) Mortgagor's interest as lessor in any present or future lease or right to income growing out of the use or occupancy of the Mortgaged Property or improvements thereto, whether pursuant to lease or otherwise, or (d) any other item included in the definition of the Mortgaged Property, shall never be construed to alter any of the rights of Mortgagee as determined by this Mortgage or to impugn the priority of Mortgagee's lien and security interest with respect to the Mortgaged Property; such mention in a financing statement is declared to be for the protection of Mortgagee in the event any court shall hold that notice of Mortgagee's priority of interest with respect to any such portion of the Mortgaged Property must be filed in the Uniform Commercial Code records in order to be effective against or take priority over any particular class of persons, including but not limited to the federal government and any subdivision or instrumentality of the federal government. This Mortgage or a carbon, photographic copy or other reproduction hereof or of any financing statement shall be sufficient as a financing statement.

27.     Mortgagor consents and agrees that, at any time and from time to time, without notice, (a) Mortgagee and the owner(s) of any collateral then securing the Loan may agree to release, increase, change, substitute or exchange all or any part of such collateral, and (b) Mortgagee and any person(s) then primarily liable for the Loan may agree to renew, extend or compromise the Loan in whole or in part or to modify the terms of the Loan in any respect whatsoever. Mortgagor agrees that no such release, increase, change, substitution, exchange, renewal, extension, compromise or modification, no sale of the Mortgaged Property or any part thereof, no forbearance on the part of Mortgagee, nor any other indulgence given by Mortgagee (whether with or without consideration) shall relieve or diminish in any manner the liability of any Obligor, nor adversely affect the priority of this Mortgage, nor limit or prejudice or impair any right or remedy of Mortgagee. All Obligors and all those claiming by, through or under any of them hereby jointly and severally waive any and all right to prior notice of, and any and all defenses or claims based upon, any such release, increase, change, substitution, exchange, renewal, extension, compromise, modification, sale, forbearance or indulgence. Mortgagee, in its



sole discretion, may allow Mortgagor to substitute other collateral in lieu of the collateral then securing the Loan upon request by Mortgagor; however, Mortgagee is under no obligation to agree to a substitution of collateral. In the event of such substitution, Mortgagor shall pay all costs, fees and legal expenses associated with such substitution and/or modification of the Loan Documents.

28. Mortgagee and any persons authorized by Mortgagee shall have the right, from time to time at the discretion of Mortgagee, to enter and inspect the Mortgaged Property pursuant to Section 35 herein. At any time after default under the terms of the Promissory Note, this Mortgage or any other Loan Document, if any of the buildings, improvements or equipment now or hereafter located on or in the Mortgaged Property shall be unprotected or unguarded, or if any improved portion of the Mortgaged Property shall be allowed to remain vacant or deserted, then, at its option, Mortgagee may employ watchmen for the Mortgaged Property and expend any monies deemed necessary by Mortgagee to protect the Mortgaged Property and the buildings, improvements and equipment thereon from waste, vandalism and other hazards, depredation or injury, and any sums expended by Mortgagee for such purpose shall bear interest, shall be paid and shall be secured as provided in paragraph 2 hereinabove.

29. Mortgagor agrees that the management of the Mortgaged Property shall be conducted at all times by Mortgagor, or by such other professional property management organization as Mortgagee shall approve in writing, which Mortgagee may grant or withhold in its sole discretion. At any time after default under the Promissory Note, this Mortgage or any other Loan Documents, if Mortgagee shall determine in its sole discretion that the management or maintenance of the Mortgaged Property is unsatisfactory, then Mortgagor shall employ as managing agent of the Mortgaged Property such person(s) as Mortgagee may designate from time to time, at Mortgagor's sole expense and for the duration of the default. Any sums advanced by Mortgagee in connection with such managing agent shall bear interest, shall be paid and shall be secured as provided in paragraph 2 hereinabove.

30. In order to induce Mortgagee to make the Loan, Mortgagor represents and warrants that (a) except as previously or concurrently disclosed in writing to Mortgagee, there are no actions, suits or proceedings pending or threatened against or affecting any Obligor or any portion of the Mortgaged Property, or involving the validity or enforceability of this Mortgage or the priority of its lien, before any court of law or equity or any tribunal, administrative board or governmental authority; (b) the execution and delivery of the Promissory Note, this Mortgage and all other Loan Documents do not and shall not (i) violate any provisions of any law, rule, regulation, order, writ, judgment, injunction, decree, determination or award applicable to any Obligor, nor (ii) result in a breach of, or constitute a default under, any indenture, bond, mortgage, lease, instrument, credit agreement, undertaking, contract or other agreement to which any Obligor is a party or by which any of them or their respective properties may be bound or affected; (c) the Promissory Note, this Mortgage and all other Loan Documents constitute valid and binding obligations of the Obligor(s) executing the same, enforceable against such Obligor(s) in accordance with their respective terms; (d) all financial statements of the Obligors previously delivered to Mortgagee have been prepared in accordance with generally accepted accounting principles consistently applied and fairly present the correct respective financial conditions of the Obligors as of their respective dates, and the foregoing shall be true with

13 of 18



respect to all financial statements of the Obligors delivered to Mortgagee hereafter; (e) there is no fact that the Obligors have not disclosed to Mortgagee in writing that could materially adversely affect their respective properties, business or financial conditions or the Mortgaged Property or any other collateral for the Loan; (f) the Obligors have duly obtained permits, licenses, approvals and consents from, and made all filings with, any governmental authority (and the same have not lapsed nor been rescinded or revoked) which are necessary in connection with the execution or delivery or enforcement of this Mortgage or any other Loan Document or the performance of any Obligor's obligations thereunder; (g) the proceeds of the Loan are not being used to purchase or carry any "margin stock" within the meaning of Regulation "U" of the Board of Governors of the Federal Reserve System, nor to extend credit to others for that purpose; and (h) each extension of credit secured by this Mortgage is exempt from the provisions of the Federal Consumers Credit Protection Act (Truth-In-Lending Act) and Regulation "Z" of the Board of Governors of the Federal Reserve System, because Mortgagor is a person fully excluded therefrom, and/or because said extension of credit is only for business or commercial purposes of Mortgagor and is not being used for personal, family, household or agricultural purposes. Mortgagor acknowledges and agrees that Mortgagee is relying on the representations and warranties in this Mortgage and all other Loan Documents as a precondition to making the Loan, and that all such representations and warranties shall survive the closing of the Loan and any bankruptcy proceedings.

31.    If Mortgagor is a corporation, partnership or other business entity, then Mortgagor hereby represents and warrants, in order to induce Mortgagee to make the Loan, that: (a) Mortgagor is duly organized, validly existing and in good standing under the laws of the jurisdiction of its creation and the state of Florida; (b) Mortgagor has all requisite power and authority (corporate or otherwise) to conduct its business, to own its properties, to execute and deliver the Promissory Note and this Mortgage and all other Loan Documents, and to perform its obligation under the same; (c) the execution, delivery and performance of the Promissory Note, this Mortgage and all other Loan Documents have been duly authorized by all necessary actions (corporate or otherwise) and do not require the consent or approval of Mortgagor's stockholders (if a corporation) or of any other person or entity whose consent has not been obtained; and (d) the execution, delivery and performance of the Promissory Note, this Mortgage and all other Loan Documents do not and shall not conflict with any provision of Mortgagor's bylaws or articles of incorporation (if a corporation), partnership agreement (if a partnership) or trust agreement or other document pursuant to which Mortgagor was created and exists.

32.    Mortgagor and Mortgagee intend that all of the provisions of this Mortgage shall be valid and enforceable as specifically set forth. Any judicial determination that any provision of this Mortgage shall not be valid or enforceable as specifically set forth shall not result in that provision being declared invalid but same shall be deemed modified in a manner so as to result in the same being valid and enforceable to the maximum extent permitted by law. As to any portion that is actually determined by a competent court having jurisdiction to be invalid, it is the intention of the Mortgagor and the Mortgagee that the remainder of the document or (if applicable) clause, paragraph, or article shall be enforced as written and the declaration of invalidity shall apply only to the clause, paragraph or article in question.

14 of 18



33.    (a)    Mortgagor represents that, to the best of Mortgagor's knowledge, neither Mortgagor nor any other person or entity has ever generated, used or disposed of any Hazardous Substance (as defined below) from or in connection with the Mortgaged Property or used the Mortgaged Property as a storage facility for any Hazardous Substance.

(b)    Mortgagor agrees to indemnify Mortgagee and hold Mortgagee harmless from and against any and all losses, liabilities, including strict liability, damages, injuries, expenses, including reasonable attorneys' and paralegals' fees, costs of any settlement or judgment and claims of any and every kind whatsoever paid incurred or suffered by, or asserted against, Mortgagee by any person or entity or governmental agency for, with respect to, or as a direct or indirect result of, the presence, usage, storage, generation or disposal on or under or in connection with the Mortgaged Property, or the escape, seepage, leakage, spillage, discharge, emission, discharging or release from the Mortgaged Property, of any Hazardous Substance (including, without limitation, any losses, liabilities, including strict liability, damages, injuries, expenses, including attorneys and paralegals' fees, costs of any settlement or judgment or claims asserted or arising under the Comprehensive Environmental Response, Compensation and Liability Act, under any so called Federal, state or local "superfund" or "superlien" law, or under any statute, law, ordinance, code, rule, regulation, order or decree regulating, with respect to or imposing liability, including strict liability, or standards of conduct concerning any Hazardous Substance), regardless of whether or not within the control of Mortgagee ("Environmental Laws").

(c)    For purposes of this paragraph 33, "Hazardous Substance" shall mean and include those elements or compounds which are from time to time contained in the list of hazardous substances adopted by the United States Environmental Protection Agency ("EPA") and the list of toxic pollutants designated by Congress or the EPA or defined by any other Federal, state or local statute, law, ordinance, code, rule, regulation, order or decree regulating, relating to, or imposing liability or standards of conduct concerning, any hazardous, toxic or dangerous waste, substance or material as now or at any time hereafter in effect.

(d)    If Mortgagor receives any notice of (i) the happening of any event involving the spill, release, leak, seepage, discharge or cleanup of any Hazardous Substance on or in connection with the Mortgaged Property or in connection with operations on it; or, (ii) any complaint, order, citation or notice with regard to air emissions, water discharges, or any other environmental, health or safety matter affecting or related to the Mortgaged Property (an "Environmental Complaint") from any person or entity (including without limitation the EPA), then Mortgagor shall immediately notify Mortgagee orally and in writing of that notice.

(e)    Mortgagee shall have the right but not the obligation, and without limitation of Mortgagee's rights under this Mortgage, to enter onto the Mortgaged Property or to take any actions as Mortgagee deems necessary or advisable to cleanup, remove, resolve or minimize the impact of, or otherwise deal with, any Hazardous Substance or Environmental Complaint following receipt of any notice from any person or entity (including without limitation the EPA) asserting the existence of any Hazardous Substance or any Environmental Complaint pertaining to the Mortgaged Property or any part of it which, if true, could result in an order, suit or other action against Mortgagor and/or which, in the absolute and sole opinion of Mortgagee, could jeopardize Mortgagee's security under this Mortgage. All reasonable costs and expenses incurred

15 of 18



by Mortgagee in the exercise of any rights shall be secured by this Mortgage and shall be payable by Mortgagor upon demand.

(f)    Mortgagee shall have the right, in its absolute and sole discretion, to require Mortgagor to periodically (but not more frequently than annually unless an Environmental Complaint is then outstanding) perform (at Mortgagor's expense) an environmental audit and, if deemed necessary by Mortgagee, an environmental risk assessment, each of which must be satisfactory to Mortgagee, of the Mortgaged Property, of hazardous waste management practices and/or hazardous waste disposal sites used in connection with operations conducted at the Mortgaged Property. The audit and/or risk assessment must be by an environmental consultant satisfactory to Mortgagee. Should Mortgagor fail to perform the environmental audit and/or risk assessment within thirty (30) days of Mortgagee's written request, Mortgagee shall have the right but not the obligation to retain an environmental consultant to perform the environmental audit and/or risk assessment. All costs and expenses incurred by Mortgagee in the exercise of those rights shall be secured by this Mortgage and shall be payable by Mortgagor upon demand or charged to Mortgagor's loan balance at the discretion of Mortgagee.

(g)    Mortgagor agrees that: (i) in the event Mortgagee requests an audit or assessment as afore-stated and the audit or assessment indicates, or, (ii) it is otherwise determined that, there is or was (or potentially is or was) any past or present use, generation, release, treatment, discharge, emission, escape, seepage, leakage, spillage, handling, storage, transportation, disposal, clean-up or presence of any Hazardous Substance at, on or under the Mortgaged Property or adjacent property, Mortgagor shall expeditiously, continuously, in good faith and with due diligence take all steps necessary to define the nature and extent of the Hazardous Substance, any risks related to or resulting from it, and possible remedial measures; and shall thereafter fully correct and fully remedy any and all violations of Environmental Laws and obtain any and all necessary environmental permits and approvals associated with it. Mortgagor shall promptly upon demand by Mortgagee, shall deposit with Mortgagee security satisfactory to Mortgagee in an amount reasonably determined by Mortgagee (when added to the available insurance proceeds, if any) to be sufficient to insure the payment in full of all costs of fully correcting and fully remedying any and all violations of Environmental Laws.

(h)    Any breach of any warranty, representation or agreement contained in this paragraph 33 shall be an event of default under this Mortgage and shall entitle Mortgagee to exercise any and all remedies provided in this Mortgage or otherwise permitted by law. The provisions of this paragraph 33 shall survive satisfaction, release or foreclosure of this Mortgage.

34.    Subject to applicable law or to a written waiver by Mortgagee, Mortgagor shall pay to Mortgagee on the day monthly payments are due under the Promissory Note pursuant to which Mortgagor, as Maker, makes monthly payments to Mortgagee, as Payee, until the Promissory Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Mortgage as a lien on the Mortgaged Property; (b) yearly hazard or property insurance premiums; and (c) yearly flood insurance premiums, if any (collectively, the "Escrow Items"). Mortgagee may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

16 of 18



The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity. Mortgagee shall apply the Funds to pay the Escrow Items. The Funds shall not be, nor deemed to be trust funds, but may be commingled with the general funds of Mortgagee, and no interest shall be payable in respect thereof. The Funds are pledged as additional security for all sums secured by this Mortgage. In the event of default under the terms, covenants and conditions in the Promissory Note, this Mortgage or any of the Loan Documents, Mortgagee may apply to the reduction of sums secured hereby, in such manner as Mortgagee shall determine, any amount under this paragraph remaining to Mortgagor's credit and any return premium received from cancellation of any insurance policy by Mortgagee upon foreclosure of this Mortgage.

If the amount of the Funds held by Mortgagee at any time is not sufficient to pay the Escrow Items when due, Mortgagee may so notify Mortgagor in writing, and, in such case Mortgagor shall pay to Mortgagee the amount necessary to make up the deficiency. Upon payment in full of all sums secured by this Mortgage, Mortgagee shall promptly refund to Mortgagor any Funds held by Mortgagee.

35. Mortgagor will, at such times during normal business hours as Mortgagee may reasonably request, permit Mortgagee, by its agents, accountants and attorneys, upon reasonable notice, to visit and inspect the Mortgaged Property and/or Mortgagor's principal place of business and examine such records and books of account and to discuss its affairs, finances, and accounts with Mortgagor. During the term of the Note, Mortgagor shall furnish to Mortgagee annually, within ninety (90) days after the close of each fiscal year of Mortgagor, all of the following: (i) statements relating to the Mortgaged Property, showing, among other things, all items of income and expense relative to the Mortgaged Property; and (ii) complete financial statements concerning Mortgagor, including information respecting the assets and liabilities of Mortgagor and a profit and loss statement for Mortgagor. Each of such statements shall be prepared in a form reasonably satisfactory to Mortgagee and shall be certified to be true and correct by Mortgagor. Mortgagor, in its sole discretion, may request that the financial statements be audited and prepared by a Certified Public Accountant. If Mortgagor's fiscal year is not the calendar year, Mortgagor shall advise Mortgagee in writing as to the commencement date of Mortgagor's fiscal year. Within forty-five (45) days after filing with the Internal Revenue Service, Mortgagor shall annually furnish Mortgagee with a copy of Mortgagor's income tax return.

36. This Mortgage, the Promissory Note and the Loan shall be cross-collateralized and cross-defaulted with any other mortgages and promissory notes now or hereafter executed by Mortgagor, and/or any guarantor or affiliated entities of Mortgagor, in favor of Mortgagee, its successors and/or assigns including that certain and Promissory Note secured by that certain Mortgage from Lender to TP3, LLC dated August 12, 2005 and recorded in Official Records Book 19073 Page 1421 of the Official Records of Palm Beach County, Florida. Mortgagor hereby waives, to the extent permitted by law, the benefit of all rights of marshalling in the event of any sale hereunder of the Mortgaged Property.



38.   WAIVER OF JURY TRIAL.   THE UNDERSIGNED WAIVES THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, ANY ASPECT OF THE TRANSACTION IN CONNECTION WITH WHICH THIS DOCUMENT IS BEING GIVEN OR ANY DOCUMENT EXECUTED OR DELIVERED IN CONNECTION WITH THIS TRANSACTION.   THIS WAIVER IS KNOWINGLY, INTENTIONALLY AND VOLUNTARILY MADE BY THE UNDERSIGNED AND THE UNDERSIGNED ACKNOWLEDGE THAT NO ONE HAS MADE ANY REPRESENTATIONS OF FACT TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT. THE UNDERSIGNED FURTHER ACKNOWLEDGES HAVING BEEN REPRESENTED IN CONNECTION WITH THE TRANSACTION WITH RESPECT TO WHICH THIS DOCUMENT IS BEING GIVEN AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, SELECTED BY THE UNDERSIGNED'S OWN FREE WILL, AND THAT THE UNDERSIGNED HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH SUCH COUNSEL.   THE UNDERSIGNED FURTHER ACKNOWLEDGES HAVING READ AND UNDERSTOOD THE MEANING AND RAMIFICATIONS OF THIS WAIVER PROVISION.

IN WITNESS WHEREOF, Mortgagor has executed these presents on the day and year first above written.

WITNESSES:

Print Name: _____

Print Name: _____

MORTGAGOR:

TP5, LLC
a Florida limited liability company

By: _____
JEFFREY M. SISKIND
Managing Member

STATE OF FLORIDA         )
                         ) ss:
COUNTY OF PALM BEACH     )

I HEREBY CERTIFY that on this 30th day of March 2007, before me an officer duly authorized in the state aforesaid and in the county aforesaid to take acknowledgments, personally appeared JEFFREY M. SISKIND, as Managing Member of TP5, LLC, a Florida limited liability company, who is/are personally known to me or who provided FL driver's license as identification, and he/she acknowledged before me that he/she executed the same for the purpose therein expressed.

My commission expires: 5/3/2010

_____
NOTARY PUBLIC
STATE OF FLORIDA

Notary Public State of Florida
David Edward Grandpre
My Commission DD345072
Expires 05/03/2010

18 of 18

# PREPAYMENT RIDER

[This Rider is to be attached and recorded with the Mortgage]

THIS PREPAYMENT RIDER is made this 30th day of March 2007, and is incorporated into and shall be deemed to amend and supplement the Mortgage (the "Mortgage") dated the date hereof granted TP5, LLC, a Florida limited liability company, whose address is 525 South Flagler, Suite 200, West Palm Beach, FL 33401 (the "Borrower"), in favor of OptimumBank, a Florida banking corporation (the "Lender") and intended to secure Borrower's obligations under that certain Promissory Note (the "Note") dated the date hereof and executed by Borrower in favor of Lender.

    A.    PREPAYMENT PENALTY. Notwithstanding any language contained in the Note or Mortgage to the contrary, during the period commencing on the date hereof and ending on the third anniversary of said date (the "Prepayment Penalty Period"), Borrower shall pay Lender, in the event Borrower prepays the principal balance due under the Note, in whole or in part, a sum equal to two percent (2.0%) of any partial or full prepayment of principal so made (the "Prepayment Penalty"). Lender shall not be obligated to accept any partial or full prepayment of principal due under the Note during the Prepayment Penalty Period unless and until Borrower pays any Prepayment Penalty applicable to such prepayment. After the expiration of the Prepayment Penalty Period, Borrower may prepay the Principal amount outstanding in whole or at any time without premium or penalty or in part without premium or penalty and at times as hereinafter provided. The Lender may require that any partial prepayment (i) be made on the date monthly installments are due; and (ii) be in the amount of that part of one or more monthly installments which would be applicable to Principal.

    Upon the occurrence of an event of default under the Note and following acceleration of maturity thereof by Lender, a tender of payment of or entry of judgment for the amount necessary to satisfy the entire unpaid principal balance declared due and payable shall be deemed to constitute an attempted evasion of the aforesaid restrictions on the right of prepayment and shall be deemed a prepayment thereunder, and such payment or judgment must, therefore, include the Prepayment Penalty then in effect under the terms thereof in connection with any prepayment. Lender shall have the right to include and bid in such Prepayment Penalty as an amount due to Lender in connection with any foreclosure sale.

    B.    Except as specifically modified herein, the terms and provisions of the Mortgage are valid and shall remain in full force and effect.

    BY SIGNING BELOW, Borrower hereby accepts and agrees to the terms and provisions of the foregoing instrument.

    BY SIGNING BELOW, Borrower hereby accepts and agrees to the terms and provisions of the foregoing instrument.

BORROWER:

TP5, LLC
a Florida limited liability company

By: _____
    JEFFREY M. SISKIND
    Managing Member

19

# EXHIBIT C

# FUTURE ADVANCEPROMISSORY NOTE

**$53,000.00**                                                  **West Palm Beach, FL**
                                                                **July 25, 2008**

FOR VALUE RECEIVED, the undersigned, as Maker, promises to pay to OptimumBank, a Florida banking corporation, at its offices at 2477 East Commercial Boulevard, Fort Lauderdale, FL 33308 (the "Payee") or such other place as Payee may from time to time designate, the principal sum of **FIFTY THREE THOUSAND AND 00/100 DOLLARS ($53,000.00)** together with interest thereon from the date hereof until **April 1 2032**, as follows: On the date hereof, Maker has paid to Payee, in advance, all of the interest that is to accrue on the outstanding principal balance of this Note at an interest rate of **six percent (6.00%)** per annum from the date hereof through **August 1, 2008**. Commencing **September 1, 2008** and on the 1st day of each and every month thereafter through and including **July 1, 2011** Maker shall pay to Lender equal monthly installments of accrued but unpaid interest thereon at an interest rate of six percent (6.00%) per annum. Maker shall pay to the holder hereof equal monthly installments of accrued but unpaid interest thereon, based on a **284 month amortization** of the full amount of this Note and an initial interest rate of **six percent (6.00%)** per annum. Commencing **August 1, 2011** and on the 1st day of each and every month thereafter through and including **April 1, 2032**, Maker shall pay to the holder hereof equal monthly installments of principal and interest thereon., based on a **248 month amortization** of the full amount of this Note and an initial interest rate of **six percent (6.00%)** per annum.

On **July 1, 2013** and on the 1st day of **July** each year thereafter (each is a "Change Date"), the interest rate shall be changed to a new fixed interest rate, calculated by adding **four and one-quarter percentage points (4.25%)** to the Current Index (defined hereinafter). The Payee will then round up the result of this addition to the nearest one-eighth of one percentage point (0.125%). The "Index" is the weekly average yield on United States Treasury Securities adjusted to a constant maturity of two (2) years as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before the Change Date, is the "Current Index". Notwithstanding the foregoing, the interest rate will never be less than **six percent (6.0%).**

Payee will determine the amount of the new monthly payment, as of the applicable Change Date, that would be sufficient to repay, on **April 1 2032**, the unpaid principal in full at the new interest rate in substantially equal payments. The result of this calculation will be the amount of Maker's new monthly payment. The new interest rate will become effective on the



applicable Change Date. Maker will pay the amount of the new monthly payment on the first monthly payment date after the applicable Change Date and on every monthly payment date thereafter until the next ensuing Change Date at which time the interest rate and the amount of the monthly payment shall change again as provided hereinabove. On **April 1 2032**, (the "Maturity Date"), the unpaid principal balance, together with accrued unpaid interest thereon, and any other amounts due under this Promissory Note or the Mortgage (defined hereinafter) shall be due and payable. The Payee will deliver or mail to Maker notice of any changes in the interest rate and in the amount of the payment before the first monthly payment date after the applicable Change Date. Monthly Payments under this Note shall be calculated based on a 360-day year with twelve 30-day months; provided, however, interest with respect to any payments due hereunder for periods of time which are less than one month shall be calculated by multiplying the actual number of days elapsed in the period for which interest is being calculated by a daily rate based on a 360-day year.

In addition to the monthly payments of principal and interest as provided hereinabove, Maker shall also be required to make monthly payments to the Payee to be held in escrow for payment of real estate taxes and hazard and premises liability insurance, including but not limited to coverage for fire, flooding and windstorm (hereinafter, the "Escrow"). The monthly Escrow payments for real estate taxes shall represent one-twelfth (1/12) of the estimated real estate taxes on the real property located at **525 South Flagler Drive, Unit CCU3A2, CCU3B2 and CCU3C2 (5th Floor) West Palm Beach, FL 33401.** Payments shall be applied first to pay all outstanding costs, including the Escrow, second to pay all unpaid interest and thereafter to the principal indebtedness.

This Note is secured by a mortgage deed and security agreement (the "Mortgage") of even date herewith from Maker to Payee, which Mortgage grants a lien on certain real estate and personal property located in **Palm Beach County, Florida**, more particularly described therein, a collateral assignment of rents, UCC-1 financing statements and such other documentation as required by Payee, all of the foregoing, together with this Note, being hereinafter collectively referred to as the "Loan Documents".

Failure of Maker to pay any installment of principal or interest as required herein on the date upon which such payment becomes due shall constitute a default hereunder. Any default or event which by the terms of any mortgage securing this Note or any loan agreement or other document executed in connection herewith constitutes a default thereunder shall also constitute a default hereunder. In the event of any such default, the holder of this Note may at its option, after the expiration of a 10-day grace period, declare all unpaid indebtedness evidenced by this Note and any modifications hereof immediately due and payable without notice, anything contained in any instrument securing the indebtedness evidenced hereby or in any related instrument to the contrary notwithstanding. Failure at any time to exercise this option shall not constitute a waiver of the right to exercise the same at any other time. In the event of the acceleration of this Note by reason of default, any unearned interest on the principal precipitated to maturity will be eliminated.

During the period commencing on **July 25 2008** and ending on the **third** anniversary of said date (the "Prepayment Penalty Period"), Maker shall pay Payee, in the event Maker prepays the principal balance due under this Note, in whole or in part, a sum equal to **two percent (2.0%)** of any partial or full prepayment of principal so made (the "Prepayment Penalty"). Payee shall not be obligated to accept any partial or full prepayment of principal due under this Note



during the Prepayment Penalty Period unless and until Maker pays the Prepayment Penalty applicable to such prepayment. After the expiration of the Prepayment Penalty Period, Maker may prepay the principal amount outstanding in whole at any time without premium or penalty or in part without premium or penalty and at times as hereinafter provided. The Payee may require that any partial prepayment (i) be made on the date monthly installments are due; and (ii) be in the amount of that part of one or more monthly installments which would be applicable to principal. Any partial prepayment shall be applied against the last due installment or installments of principal and shall not postpone the due date of any subsequent monthly installments or change the amount of such installment unless the Payee shall otherwise agree in writing.

Upon the occurrence of an event of default under the Note and following acceleration of maturity thereof by Lender, a tender of payment of or entry of judgment for the amount necessary to satisfy the entire unpaid principal balance declared due and payable shall be deemed to constitute an attempted evasion of the aforesaid restrictions on the right of prepayment and shall be deemed a prepayment thereunder, and such payment or judgment must, therefore, include the Prepayment Penalty then in effect under the terms thereof in connection with any prepayment. Lender shall have the right to include and bid in such Prepayment Penalty as an amount due to Lender in connection with any foreclosure sale.

While in default and if unpaid after maturity, the outstanding principal shall bear interest at the highest lawful rate, payable monthly on the first day of each month thereafter. In the event that there is no limitation on the rate of interest that may be charged to Maker, twenty-four and one half percent (24.5%) per annum shall be deemed to be the highest lawful rate.  Should it become necessary to collect this Note through an attorney, then all parties hereto, whether as Maker, endorser or guarantor, each jointly and severally agree to pay all reasonable costs of collecting this Note including reasonable attorneys' (including paralegals') fees and appellate attorneys' (including paralegals') fees, whether collected by suit or otherwise and in connection with all proceedings including post-judgment proceedings.

Maker shall pay to the holder hereof a late charge equal to five percent (5%) of any amount not received by the holder hereof within ten (10) days after such amount is due irrespective of the length of any grace period of longer duration provided herein or in any document executed in connection herewith or collateral hereto. In addition, if any check presented by Maker to pay amounts due under this Note is dishonored by the issuing bank or if it is returned by Payee because it is incomplete, Maker shall pay Payee a reasonable fee for each such returned check. This fee shall be assessed in addition to any other applicable late charge and said fee will not constitute interest.

The Payee is given the right of setoff against all deposits, accounts, credits, and other property of each Maker, endorser, surety, guarantor or accommodation party of this Note (hereinafter referred to collectively as the obligors and each individually, as an "Obligor"), now or hereafter coming into the control, custody or possession of the Payee, whether for the expressed purpose of being used by the Payee as collateral, or for any other purpose, and upon any balance or balances to the credit of any accounts, including trust and agency accounts maintained with the Payee by any of the Obligors, and the Obligors agree to deliver to the Payee additional collateral for the loan as shall be satisfactory to the Payee.

The Maker hereby waives presentment, demand for payment, protest and notice of nonpayment and of protest and any and all other notices and demands whatsoever.



The Maker hereof and all endorsers or guarantors of this Note now, or at any time liable, whether primarily or secondarily, for the payment of the indebtedness evidenced hereby, for themselves, their heirs, legal representatives, successors and assigns respectively, hereby expressly waive presentment for payment, protest and demand, notice of protest, demand and dishonor and non-payment of this Note, and diligence in collection, and consent to any and all extensions and renewals of such payments or any part thereof without notice, that may be extended by Payee, and further consent that the real or collateral security, or any part thereof, for this Note may be released by Payee, or the performance of the obligations of the Maker under any Loan Documents may be waived, or other indulgence granted by Payee, whether the same is granted to the Maker or any subsequent owner of the property which is security for the payment hereof, all without in any way modifying, altering, releasing, affecting, limiting or impairing their respective liability or the lien of the Mortgage, and to the extent permitted by law, the Maker does hereby waive and release all rights of redemption, valuation, appraisement, stay of execution, notice of election to mature or to declare due the whole of the indebtedness evidenced hereby, and each does hereby agree to pay reasonable attorneys' fees and expenses of collection (including appellate fees and expenses) in the event that this Note is placed in the hands of any attorney for collection or suit is brought thereon.

Notwithstanding any provision in this Note or in any instrument now or hereafter relating to or securing the within indebtedness, in the event that the total liability for payments of interest and payments in the nature of interest including, without limitation, all charges, fees, exactions or other sums which may at any time be deemed to be interest for any reason whatsoever, result in an effective rate of interest which for any interest payment period exceeds the limit imposed by the usury laws of the jurisdiction governing this Note, all sums in excess of those lawfully collectible as interest for the period in question shall, without further agreement or notice by, between, amongst or to any of the parties hereto, be applied to the reduction of principal upon receipt of such sums by the holder hereof, with the same force and effect as though the Maker had specifically designated such excess sums to be so applied to the reduction of principal and the holder had agreed to accept such sums as a premium-free prepayment of principal; provided, however, that the holder of this Note may, at any time and from time to time, elect, by notice in writing, to waive, reduce or limit the collection of any sums in excess of those lawfully collectible as interest rather than accept such sums as a prepayment of principal.

In the event: (i) of any transfer, sale, conveyance, agreement for sale or deed, lease containing an option to purchase, or the term of which exceeds two (2) years, pledge or hypothecation of all or any portion of the property (the "Property") encumbered by the mortgage securing this Note (the "Mortgage") or any legal, equitable or beneficial interest therein; (ii) of any assignment of all or any portion of the rents from the Property; (iii) of a change in the ownership of the Property directly, indirectly, indirectly or by operation of law; or (iv) any mortgage is entered into in connection with or with respect to the Property (except as expressly permitted in the Mortgage) without the prior written consent of the Payee and the assumption in regular form of law by the grantee of the obligations to Payee created hereby and by the Mortgage, then, in any of such events, the entire indebtedness evidenced hereby shall, at the option of Payee become immediately due and payable without prior notice to Maker, and Payee may invoke any of the remedies provided for in this Note, the Mortgage, at law or in equity. Payee may withhold its consent in its absolute and sole discretion and with or without any reason whatsoever. In the event Payee grants its consent, it may condition such consent upon any matter whatsoever including, without limitation, those matters set forth in the Mortgage. In no event



shall title to the mortgaged property be conveyed or transferred to, or otherwise vested in, any party other than the Maker without the written consent of the Payee. For purposes of this paragraph, the following shall constitute a transfer by the Maker and a default under this Promissory Note and the Loan Documents: (a) if Maker is a corporation, (i) the transfer of stock of Maker or any stockholder of Maker (whether such purported transfer shall be by direct transfer by such stockholder, the result of encumbrance of such stock by such stockholder or the result of action by any party against such stockholder), or (ii) the issuance of additional stock of Maker after the date hereof; (b) if Maker is a partnership or joint venture (i) the transfer of any partnership or joint venture interest or any partner (general or limited) or joint venture, or (ii) if any new partners (limited or general) or joint ventures are admitted to Maker; and (c) if Maker is a limited liability company, (i) the transfer of any membership interest of any member or (ii) if any new members are admitted to Maker.

This Note, and any other document or agreement executed in connection with this Note, shall be governed by and interpreted solely in accordance with the laws of the State of Florida.

Wherever in this Note one of the parties to it is named or referred to, the heirs, legal representatives, successors and assigns of that party shall be included, provided that the foregoing shall not be deemed to constitute permission to transfer the Property which is otherwise restricted by the Mortgage. All covenants and agreements contained in this Note by or on behalf of Maker or by or on behalf of Payee shall bind and inure to the benefit of their respective heirs, legal representatives, successors and assigns whether so expressed or not.

Wherever used herein, the terms "holder", "maker" and "payee" shall be construed in the singular or plural, as the context requires or permits. If Maker consists of more than one person or entity, the liability of each person or entity comprising the Maker shall be joint and several.

This Note may not be changed or discharged orally, but only by a writing signed by the party who is the owner and holder of this Note.

THE UNDERSIGNED WAIVES THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, ANY ASPECT OF THE TRANSACTION IN CONNECTION WITH WHICH THIS DOCUMENT IS BEING GIVEN OR ANY DOCUMENT EXECUTED OR DELIVERED IN CONNECTION WITH SUCH TRANSACTION. THIS WAIVER IS KNOWINGLY, INTENTIONALLY AND VOLUNTARILY MADE BY THE UNDERSIGNED, AND THE UNDERSIGNED ACKNOWLEDGES THAT NO ONE HAS MADE ANY REPRESENTATIONS OF FACT TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANYWAY TO MODIFY OR NULLIFY ITS EFFECT.    THE UNDERSIGNED FURTHER ACKNOWLEDGES HAVING BEEN REPRESENTED IN CONNECTION WITH THE TRANSACTION WITH RESPECT TO WHICH THIS DOCUMENT IS BEING GIVEN AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, SELECTED BY THE UNDERSIGNED'S OWN FREE WILL, AND THAT THE UNDERSIGNED HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH SUCH COUNSEL. THE UNDERSIGNED FURTHER ACKNOWLEDGES HAVING READ AND UNDERSTOOD THE MEANING AND RAMIFICATIONS OF THIS WAIVER PROVISION.



MAKER:

TP5, LLC
a Florida limited liability company

By: _____

JEFFREY M. SISKIND
Managing Member

THE DOCUMENTARY STAMP TAX REQUIRED TO BE PAID IN CONNECTION WITH THE
INDEBTEDNESS EVIDENCED HEREBY HAS BEEN PAID AND PROPER STAMPS HAVE BEEN
AFFIXED TO THE MORTGAGE WHICH SECURES THIS NOTE.  THIS LEGEND IS AFFIXED IN
ACCORDANCE WITH SECTION 201.01, FLORIDA STATUTES.

# EXHIBIT D

# CONSOLIDATED AND REPLACEMENT PROMISSORY NOTE

$1,035,811.75                                    **West Palm Beach, FL**
                                                 **July 25, 2008**

FOR VALUE RECEIVED, the undersigned, as Maker, promises to pay to OptimumBank, a Florida banking corporation, at its offices at 2477 East Commercial Boulevard, Fort Lauderdale, FL 33308 (the "Payee") or such other place as Payee may from time to time designate, the principal sum of **One Million Thirty Five Thousand Eight Hundred Eleven and 75/100 Dollars ($1,035,811.75)** together with interest thereon from the date hereof until **April 1 2032**, as follows: On the date hereof, Maker has paid to Payee, in advance, all of the interest that is to accrue on the outstanding principal balance of this Note at an interest rate of **six percent (6.00%)** per annum from the date hereof through **August 1, 2008.** Commencing **September 1, 2008** and on the 1st day of each and every month thereafter through and including **July 1, 2011** Maker shall pay to Lender equal monthly installments of accrued but unpaid interest thereon at an interest rate of six percent (6.00%) per annum. Maker shall pay to the holder hereof equal monthly installments of accrued but unpaid interest thereon, based on a **284 month amortization** of the full amount of this Note and an initial interest rate of **six percent (6.00%)** per annum, in the initial amount of **Five Thousand One Hundred Seventy Nine and 06/100 ($5,179.06) dollars.** Commencing **August 1, 2011** and on the 1st day of each and every month thereafter through and including **July 1, 2013**, Maker shall pay to the holder hereof equal monthly installments of principal and interest thereon., based on a **248 month amortization** of the full amount of this Note and an interest rate of **six percent (6.00%)** per annum.

On **July 1, 2013** and on the 1st day of **July** each year thereafter (each is a "Change Date"), the interest rate shall be changed to a new fixed interest rate, calculated by adding **four and one-quarter percentage points (4.25%)** to the Current Index (defined hereinafter). The Payee will then round up the result of this addition to the nearest one-eighth of one percentage point (0.125%). The "Index" is the weekly average yield on United States Treasury Securities adjusted to a constant maturity of two (2) years as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before the Change Date, is the "Current Index". Notwithstanding the foregoing, the interest rate will never be less than **six percent (6.0%).**

Payee will determine the amount of the new monthly payment, as of the applicable Change Date, that would be sufficient to repay, on **April 1 2032**, the unpaid principal in full at

the new interest rate in substantially equal payments. The result of this calculation will be the amount of Maker's new monthly payment. The new interest rate will become effective on the applicable Change Date. Maker will pay the amount of the new monthly payment on the first monthly payment date after the applicable Change Date and on every monthly payment date thereafter until the next ensuing Change Date at which time the interest rate and the amount of the monthly payment shall change again as provided hereinabove. On **April 1 2032,** (the "Maturity Date"), the unpaid principal balance, together with accrued unpaid interest thereon, and any other amounts due under this Promissory Note or the Mortgage (defined hereinafter) shall be due and payable. The Payee will deliver or mail to Maker notice of any changes in the interest rate and in the amount of the payment before the first monthly payment date after the applicable Change Date. Monthly Payments under this Note shall be calculated based on a 360-day year with twelve 30-day months; provided, however, interest with respect to any payments due hereunder for periods of time which are less than one month shall be calculated by multiplying the actual number of days elapsed in the period for which interest is being calculated by a daily rate based on a 360-day year.

In addition to the monthly payments of principal and interest as provided hereinabove, Maker shall also be required to make monthly payments to the Payee to be held in escrow for payment of real estate taxes and hazard and premises liability insurance, including but not limited to coverage for fire, flooding and windstorm (hereinafter, the "Escrow"). The monthly Escrow payments for real estate taxes shall represent one-twelfth (1/12) of the estimated real estate taxes on the real property located at **525 South Flagler Drive, Unit CCU3A2, CCU3B2 and CCU3C2 (5th Floor) West Palm Beach, FL 33401.** Payments shall be applied first to pay all outstanding costs, including the Escrow, second to pay all unpaid interest and thereafter to the principal indebtedness.

This Note consolidates and replaces: (i) that certain Promissory Note dated March 30, 2007 (in the original principal amount of $1,000,000.00 executed by Maker in favor of Payee, of which the principal balance outstanding as of the date hereof, is **$982,811.75** (the "Original Note") and (ii) that certain Future Advance Promissory Note of even date herewith in the original principal amount of **$53,000.00** (the "Future Advance Note") and is secured by, among other instruments: (i) a **Mortgage Deed and Security Agreement dated March 30, 2007 and recorded April 5, 2007, in Official Records Book 21592, Page 1932,** of the Public Records of Palm Beach County, Florida as modified in part by that certain Notice of Future Advance, Future Advance Receipt and Mortgage and Loan Document Modification Agreement of even date herewith to be recorded in the Public Records of Palm Beach County, Florida (collectively, the "Mortgage"), made by Maker in favor of Payee and encumbering certain real estate and personal property located in Palm Beach County, Florida, more particularly described therein; (ii) Assignment of Leases, Rents and Profits dated **March 30, 2007** and recorded **April 5, 2007,** in Official Records Book 21592, Page 1954, of the Public Records of Palm Beach County, Florida; and (iii) UCC-1 Financing Statement (all of the foregoing, together with this Note and such other documentation as required by the Payee, being herein collectively referred to as the "Loan Documents").

Failure of Maker to pay any installment of principal or interest as required herein on the date upon which such payment becomes due shall constitute a default hereunder. Any default or event which by the terms of any Mortgage securing this Note or any loan agreement or other document executed in connection herewith constitutes a default thereunder shall also constitute a default hereunder. In the event of any such default, the holder of this Note may at its option, after the expiration of a 10-day grace period, declare all unpaid indebtedness evidenced by this

Note and any modifications hereof immediately due and payable without notice, anything contained in any instrument securing the indebtedness evidenced hereby or in any related instrument to the contrary notwithstanding. Failure at any time to exercise this option shall not constitute a waiver of the right to exercise the same at any other time. In the event of the acceleration of this Note by reason of default, any unearned interest on the principal precipitated to maturity will be eliminated.

During the period commencing on **July 25 2008** and ending on the **third** anniversary of said date (the "Prepayment Penalty Period"), Maker shall pay Payee, in the event Maker prepays the principal balance due under this Consolidated and Replacement Promissory Note (the "Note"), in whole or in part, a sum equal to **two percent (2.0%)** of any partial or full prepayment of principal so made (the "Prepayment Penalty). Payee shall not be obligated to accept any partial or full prepayment of principal due under this Note during the Prepayment Penalty Period unless and until Maker pays the Prepayment Penalty applicable to such prepayment. After the expiration of the Prepayment Penalty Period, Maker may prepay the principal amount outstanding in whole at any time without premium or penalty or in part without premium or penalty and at times as hereinafter provided. The Payee may require that any partial prepayment (i) be made on the date monthly installments are due; and (ii) be in the amount of that part of one or more monthly installments which would be applicable to principal. Any partial prepayment shall be applied against the last due installment or installments of principal and shall not postpone the due date of any subsequent monthly installments or change the amount of such installment unless the Payee shall otherwise agree in writing.

Upon the occurrence of an event of default under the Note and following acceleration of maturity thereof by Lender, a tender of payment of or entry of judgment for the amount necessary to satisfy the entire unpaid principal balance declared due and payable shall be deemed to constitute an attempted evasion of the aforesaid restrictions on the right of prepayment and shall be deemed a prepayment thereunder, and such payment or judgment must, therefore, include the Prepayment Penalty then in effect under the terms thereof in connection with any prepayment. Lender shall have the right to include and bid in such Prepayment Penalty as an amount due to Lender in connection with any foreclosure sale.

While in default and if unpaid after maturity, the outstanding principal shall bear interest at the highest lawful rate, payable monthly on the first day of each month thereafter. In the event that there is no limitation on the rate of interest that may be charged to Maker, twenty-four and one half percent (24.5%) per annum shall be deemed to be the highest lawful rate. Should it become necessary to collect this Note through an attorney, then all parties hereto, whether as Maker, endorser or guarantor, each jointly and severally agree to pay all reasonable costs of collecting this Note including reasonable attorneys' (including paralegals') fees and appellate attorneys' (including paralegals') fees, whether collected by suit or otherwise and in connection with all proceedings including post-judgment proceedings.

Maker shall pay to the holder hereof a late charge equal to five percent (5%) of any amount not received by the holder hereof within ten (10) days after such amount is due irrespective of the length of any grace period of longer duration provided herein or in any document executed in connection herewith or collateral hereto. In addition, if any check presented by Maker to pay amounts due under this Note is dishonored by the issuing bank or if it is returned by Payee because it is incomplete, Maker shall pay Payee a reasonable fee for each

such returned check. This fee shall be assessed in addition to any other applicable late charge and said fee will not constitute interest.

The Payee is given the right of setoff against all deposits, accounts, credits, and other property of each Maker, endorser, surety, guarantor or accommodation party of this Note (hereinafter referred to collectively as the obligors and each individually, as an "Obligor"), now or hereafter coming into the control, custody or possession of the Payee, whether for the expressed purpose of being used by the Payee as collateral, or for any other purpose, and upon any balance or balances to the credit of any accounts, including trust and agency accounts maintained with the Payee by any of the Obligors, and the Obligors agree to deliver to the Payee additional collateral for the loan as shall be satisfactory to the Payee.

The Maker hereby waives presentment, demand for payment, protest and notice of nonpayment and of protest and any and all other notices and demands whatsoever.

The Maker hereof and all endorsers or guarantors of this Note now, or at any time liable, whether primarily or secondarily, for the payment of the indebtedness evidenced hereby, for themselves, their heirs, legal representatives, successors and assigns respectively, hereby expressly waive presentment for payment, protest and demand, notice of protest, demand and dishonor and non-payment of this Note, and diligence in collection, and consent to any and all extensions and renewals of such payments or any part thereof without notice, that may be extended by Payee, and further consent that the real or collateral security, or any part thereof, for this Note may be released by Payee, or the performance of the obligations of the Maker under any Loan Documents may be waived, or other indulgence granted by Payee, whether the same is granted to the Maker or any subsequent owner of the property which is security for the payment hereof, all without in any way modifying, altering, releasing, affecting, limiting or impairing their respective liability or the lien of the Mortgage, and to the extent permitted by law, the Maker does hereby waive and release all rights of redemption, valuation, appraisement, stay of execution, notice of election to mature or to declare due the whole of the indebtedness evidenced hereby, and each does hereby agree to pay reasonable attorneys' fees and expenses of collection (including appellate fees and expenses) in the event that this Note is placed in the hands of any attorney for collection or suit is brought thereon.

Notwithstanding any provision in this Note or in any instrument now or hereafter relating to or securing the within indebtedness, in the event that the total liability for payments of interest and payments in the nature of interest including, without limitation, all charges, fees, exactions or other sums which may at any time be deemed to be interest for any reason whatsoever, result in an effective rate of interest which for any interest payment period exceeds the limit imposed by the usury laws of the jurisdiction governing this Note, all sums in excess of those lawfully collectible as interest for the period in question shall, without further agreement or notice by, between, amongst or to any of the parties hereto, be applied to the reduction of principal upon receipt of such sums by the holder hereof, with the same force and effect as though the Maker had specifically designated such excess sums to be so applied to the reduction of principal and the holder had agreed to accept such sums as a premium-free prepayment of principal; provided, however, that the holder of this Note may, at any time and from time to time, elect, by notice in writing, to waive, reduce or limit the collection of any sums in excess of those lawfully collectible as interest rather than accept such sums as a prepayment of principal.

In the event: (i) of any transfer, sale, conveyance, agreement for sale or deed, lease containing an option to purchase, or the term of which exceeds two (2) years, pledge or hypothecation of all or any portion of the property (the "Property") encumbered by the mortgage securing this Note (the "Mortgage") or any legal, equitable or beneficial interest therein; (ii) of any assignment of all or any portion of the rents from the Property; (iii) of a change in the ownership of the Property directly, indirectly, involuntarily or by operation of law; or (iv) any mortgage is entered into in connection with or with respect to the Property (except as expressly permitted in the Mortgage) without the prior written consent of the Payee and the assumption in regular form of law by the grantee of the obligations to Payee created hereby and by the Mortgage, then, in any of such events, the entire indebtedness evidenced hereby shall, at the option of Payee become immediately due and payable without prior notice to Maker, and Payee may invoke any of the remedies provided for in this Note, the Mortgage, at law or in equity. Payee may withhold its consent in its absolute and sole discretion and with or without any reason whatsoever. In the event Payee grants its consent, it may condition such consent upon any matter whatsoever including, without limitation, those matters set forth in the Mortgage. In no event shall title to the mortgaged property be conveyed or transferred to, or otherwise vested in, any party other than the Maker without the written consent of the Payee. For purposes of this paragraph, the following shall constitute a transfer by the Maker and a default under this Promissory Note and the Loan Documents: (a) if Maker is a corporation, (i) the transfer of stock of Maker or any stockholder of Maker (whether such purported transfer shall be by direct transfer by such stockholder, the result of encumbrance of such stock by such stockholder or the result of action by any party against such stockholder), or (ii) the issuance of additional stock of Maker after the date hereof; (b) if Maker is a partnership or joint venture (i) the transfer of any partnership or joint venture interest or any partner (general or limited) or joint venture, or (ii) if any new partners (limited or general) or joint ventures are admitted to Maker; and (c) if Maker is a limited liability company, (i) the transfer of any membership interest of any member or (ii) if any new members are admitted to Maker.

This Note, and any other document or agreement executed in connection with this Note, shall be governed by and interpreted solely in accordance with the laws of the State of Florida.

Wherever in this Note one of the parties to it is named or referred to, the heirs, legal representatives, successors and assigns of that party shall be included, provided that the foregoing shall not be deemed to constitute permission to transfer the Property which is otherwise restricted by the Mortgage. All covenants and agreements contained in this Note by or on behalf of Maker or by or on behalf of Payee shall bind and inure to the benefit of their respective heirs, legal representatives, successors and assigns whether so expressed or not.

Wherever used herein, the terms "holder", "maker" and "payee" shall be construed in the singular or plural, as the context requires or permits. If Maker consists of more than one person or entity, the liability of each person or entity comprising the Maker shall be joint and several.

This Note may not be changed or discharged orally, but only by a writing signed by the party who is the owner and holder of this Note.

**THE UNDERSIGNED WAIVES THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, ANY ASPECT OF THE TRANSACTION IN CONNECTION WITH WHICH THIS DOCUMENT IS BEING**

GIVEN OR ANY DOCUMENT EXECUTED OR DELIVERED IN CONNECTION WITH SUCH TRANSACTION. THIS WAIVER IS KNOWINGLY, INTENTIONALLY AND VOLUNTARILY MADE BY THE UNDERSIGNED, AND THE UNDERSIGNED ACKNOWLEDGES THAT NO ONE HAS MADE ANY REPRESENTATIONS OF FACT TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANYWAY TO MODIFY OR NULLIFY ITS EFFECT. THE UNDERSIGNED FURTHER ACKNOWLEDGES HAVING BEEN REPRESENTED IN CONNECTION WITH THE TRANSACTION WITH RESPECT TO WHICH THIS DOCUMENT IS BEING GIVEN AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, SELECTED BY THE UNDERSIGNED'S OWN FREE WILL, AND THAT THE UNDERSIGNED HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH SUCH COUNSEL. THE UNDERSIGNED FURTHER ACKNOWLEDGES HAVING READ AND UNDERSTOOD THE MEANING AND RAMIFICATIONS OF THIS WAIVER PROVISION.

MAKER:

**TP5, LLC**
a Florida limited liability company

By: _____
    JEFFREY M. SISKIND
    Managing Member

THE DOCUMENTARY STAMP TAX REQUIRED TO BE PAID IN CONNECTION WITH THE INDEBTEDNESS EVIDENCED HEREBY HAS BEEN PAID AND PROPER STAMPS HAVE BEEN AFFIXED TO THE MORTGAGE AND NOTICE OF FUTURE ADVANCE, FUTURE ADVANCE RECEIPT AND MORTGAGE AND LOAN DOCUMENT MODIFICATION AGREEMENT WHICH SECURES THIS NOTE. THIS LEGEND IS AFFIXED IN ACCORDANCE WITH SECTION 201.01, FLORIDA STATUTES.

# EXHIBIT E

Doc. $189.90$
Int Tax $106.00$
Int Stamp $185.50$

CFN 20080293572
OR BK 22796 PG 1037
RECORDED 08/06/2008 15:58:34
AMT 53,000.00
Deed Doc 185.50
Intons 106.00
Palm Beach County, Florida
Sharon R. Bock,CLERK & COMPTROLLER
Pgs 1037 - 1046; (10pgs)

This instrument prepared by
Carrie Goldstein, Esquire
2477 E. Commercial Blvd., Suite 102
Fort Lauderdale, Florida 33308

## NOTICE OF FUTURE ADVANCE,
## FUTURE ADVANCE RECEIPT AND MORTGAGE
## AND LOAN DOCUMENT MODIFICATION
## AGREEMENT

THIS AGREEMENT (the "Agreement"), dated as of July 25, 2008, is by and between TP5, LLC, a Florida limited liability company with a mailing address of 525 South Flagler Drive, Fifth Floor, West Palm Beach, FL 33401 (the "Mortgagor") and OPTIMUMBANK, a Florida banking corporation, whose address is 2477 East Commercial Boulevard, Fort Lauderdale, FL 33308 (the "Mortgagee").

### PRELIMINARY STATEMENTS

A. Mortgagee is the owner and holder of that certain Promissory Note dated **March 30, 2007** in the original principal amount of **One Million and 00/100 ($1,000,000.00)** Dollars (the "Original Note") made by the Mortgagor, as Maker, payable to the order of Mortgagee. The Original Note is secured by, among other instruments: (i) a **Mortgage Deed and Security Agreement dated March 30, 2007 and recorded April 5, 2007**, in Official Records Book 21592, Page 1932, of the Public Records of Palm Beach County, Florida (the "Mortgage") made by Mortgagor in favor of Mortgagee and encumbering certain real estate and personal property located in Palm Beach County, Florida, more particularly described therein; (ii) Assignment of Leases, Rents and Profits dated **March 30, 2007** and recorded **April 5, 2007**, in Official Records Book 21592, Page 1954, of the Public Records of Palm Beach County, Florida ("Assignment"); (iii) UCC-1 Financing Statement ("Financing Statement"); and (all of the foregoing, and such other documentation as required by the Mortgagee, being herein collectively referred to as the "Loan Documents").

B. The Mortgage and Original Note are collectively referred to as the "Loan".

C. Mortgagor has requested that Mortgagee advance an additional **Fifty Three Thousand and 00/100 ($53,000.00)** to Mortgagee as a "future advance" under the terms of the Mortgage.

D. As of the date hereof, after application of the payment due July 1, 2008, the outstanding principal balance of the Original Note is **Nine Hundred Eighty Two Thousand Eight Hundred Eleven and 75/100 Dollars ($982,811.75)**.

E. Simultaneously with the execution of this Agreement, Mortgagor, as maker, has executed in favor of the Mortgagee, as payee, (i) a Future Advance Promissory Note of even date herewith in the original principal sum of $**Fifty Three Thousand and 00/100 ($53,000.00)**, as a Future Advance (the "Future Advance") under the Mortgage (the "Future Advance Note"), and (ii) a Consolidated and Replacement Promissory Note of even date herewith in the principal sum of **One Million Thirty Five Thousand Eight Hundred Eleven and 75/100 Dollars ($1,035,811.75)** which consolidates the Original Note, as amended herein, and the Future Advance Note (the Original Note, the Future Advance Note and the Consolidated and Replacement Promissory Note are sometimes referred to hereinafter collectively as the "Notes").

F. THE PROPER FLORIDA DOCUMENTARY STAMP TAX AND THE TWO MIL INTANGIBLE TAX HAVE BEEN PAID ON THE ORIGINAL NOTE AND EVIDENCE OF SUCH PAYMENT APPEARS ON THE MORTGAGE.

G.  The parties desire to put all parties on notice of the Future Advance, and to modify the terms of the Mortgage to confirm that it collateralizes the obligations and indebtedness incurred pursuant to the terms of the Notes.

NOW THEREFORE, in consideration of the Loan as evidenced by the Notes, and for other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Maker covenants with Mortgagee as follows, to wit:

1.  The foregoing Preliminary Statements recitals are true and correct and are incorporated herein by this reference.

2.  Mortgagor agrees and acknowledges that, as of the date of this Agreement, the aggregate principal balance due under the Original Note is **Nine Hundred Eighty Two Thousand Eight Hundred Eleven and 75/100 Dollars ($982,811.75)** together with accrued and unpaid interest thereon.

3.  Notice is hereby given that the Mortgagor has executed and delivered to Mortgagee the Future Advance Note. The sums disbursed by the Mortgagee, to or for the benefit of the Mortgagor, under the Future Advance Note constitute "future advances" under the terms of the Mortgage and are secured thereby, together with all other promissory notes referred to herein, in the Mortgage or in any notices of advances previously recorded in the Public Records.

4.  The Original Note, as amended herein, and the Future Advance Note are hereby consolidated and replaced by the Consolidated Note, a copy of which is attached hereto as composite **Exhibit "A"** and incorporated herein.

5.  Mortgagor certifies that the priority and dignity of the Mortgage extends to and includes future advances as if this instrument and the Future Advance Note and the Consolidated Note had been set forth in their entirety and made a part of the Mortgage and that the Mortgage, as modified hereby, now secures payment of the Notes, and any and all other indebtedness secured by the terms of the Mortgage; that the Mortgage and this Agreement are binding upon Mortgagor, its successors, assigns and legal representatives; that Mortgagor agrees to pay all indebtedness secured by the Mortgage and this Agreement at the time and in the manner contemplated therein and as modified hereby; that Mortgagor further agrees to perform, comply with and abide by each and every stipulation, agreement, covenant and condition of the Notes, the Mortgage, this Agreement, and all other documents which fully or partially secure or guarantee payment of the Notes.

6.  Under no circumstances shall this instrument or any part thereof constitute or be deemed to be a novation of the Mortgage.

7.  The Future Advance Note evidences an advance made by the Mortgagee to the Mortgagor as a mortgage loan under the provisions for future advances in the Mortgage and in accordance with Section 697.04 of the Florida Statutes.

8.  Mortgagor warrants the title to the Property and covenants that it has good right to mortgage and convey the Property; that the Property is free and clear of all liens, security interests, charges and encumbrances whatsoever, and Mortgagor has a good and perfected fee simple interest in the Property, and that the Mortgage, as modified hereby, shall be a first lien against the Property.

9.  The Mortgage is hereby modified so that the terms and conditions of the Consolidated Note and Future Advance Note shall be incorporated therein as if said notes were originally set forth in and made part of the Mortgage.

10. Mortgagor hereby ratifies and confirms all of the terms and conditions of the Assignment, Financing Statement and other Loan Documents and the lien, covenants, conditions and terms of the Assignment, Financing Statement and other Loan Documents are hereby declared to be additional collateral and security for the repayment of the Future Advance Note and Consolidated Note.

11. The Mortgagor acknowledges, represents and confirms to Mortgagee that:

(a)    No payments of interest or any other charges have been made to Mortgagee, or paid by the Mortgagor in connection with the loan evidenced by the Notes which would result in the computation of earning of interest in excess of the maximum legal rate of interest which is legally permitted under the laws of Florida, or federal law, in effect from time to time, whichever is the highest.

(b)    Mortgagee is under no obligation to grant or to make any further or additional loans to the Mortgagor, or to further extend, amend or modify the Notes, the Mortgage, or any other document executed in connection therewith.

(c)    No agreement, oral or otherwise, has been made by any of the Mortgagee's agents, servant, employees, directors, officers or partners to make any additional loans to the Maker, or to further extend, amend, or modify the Notes, the Mortgage, or any other loan document executed in connection therewith.

12. Mortgagor acknowledges and confirms that, as of the date hereof, the aggregate principal amount outstanding pursuant to the Consolidated Note is **One Million Thirty Five Thousand Eight Hundred Eleven and 75/100 Dollars ($1,035,811.75)**.

13. Mortgagor acknowledges and confirms that the Prepayment Penalty Period is hereby extended under the terms of the Consolidated Note so that during the period commencing on **July 25 2008** and ending on the **third** anniversary of said date (the "Prepayment Penalty Period"), Maker shall pay Payee, in the event Maker prepays the principal balance due under the Consolidated Note, in whole or in part, a sum equal to **two percent (2.0%)** of any partial or full prepayment of principal so made (the "Prepayment Penalty).

14. Mortgagor affirms its obligations in respect to the Notes, the Mortgage, and the other Loan Documents, and confirms that there are no defenses or offsets claimed thereon, or claims against the Mortgagee. Mortgagor waives and releases in full any claim, counterclaim, defense or setoff (whether or not now known to them) which it may have with respect to any of these obligations under the Notes, the Mortgage or any of the Loan Documents.

15. Mortgagor hereby waives, discharges and releases forever any and all existing claims, defenses, setoffs or any rights of setoff that Mortgagor many have against Mortgagee or which may affect the enforceability by Mortgagee of its security and its various rights and remedies under the Notes, the Mortgage, Assignment, Financing Statement, this Agreement and the other Loan Documents.

16. Mortgagor warrants and represents unto Mortgagee that all real and personal property taxes and assessments on the Property have been paid through the year 2007.

17. Nothing herein is intended to nor shall it constitute a novation of any of the indebtedness secured by the Mortgage, nor is anything herein intended to nor shall it operate to release, impair, diminish or subordinate the lien or priority of the lien of the Mortgage, or any other document evidencing or securing the indebtedness secured by the Notes.

18. Except as herein otherwise set forth, modified and amended, all of the terms, covenants, and conditions of the Mortgage, Assignment, Financing Statement and the other Loan Documents shall remain in full force and effect.

19. THE PARTIES HERETO WAIVE THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, ANY ASPECT OF THE TRANSACTION IN CONNECTION WITH WHICH THIS DOCUMENT IS BEING GIVEN OR ANY DOCUMENT EXECUTED OR DELIVERED IN CONNECTION WITH SUCH TRANSACTION.   THIS WAIVER IS KNOWINGLY, INTENTIONALLY AND VOLUNTARILY MADE BY THE PARTIES AND THE UNDERSIGNED ACKNOWLEDGE THAT NO ONE HAS MADE ANY REPRESENTATIONS OF FACT TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT.   THE UNDERSIGNED FURTHER ACKNOWLEDGE HAVING BEEN REPRESENTED IN CONNECTION WITH THE TRANSACTION WITH RESPECT TO WHICH THIS DOCUMENT IS BEING GIVEN AND IN MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, SELECTED BY THE UNDERSIGNEDS' OWN FREE WILL AND THAT THE UNDERSIGNED HAVE HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH SUCH COUNSEL. THE UNDERSIGNED FURTHER ACKNOWLEDGE HAVING READ AND UNDERSTOOD THE MEANING AND RAMIFICATIONS OF THIS WAIVER PROVISION.

IN WITNESS WHEREOF, the Mortgagor has duly executed this Agreement effective as of the 23ⁿᵈ·· day of July, 2008.

WITNESSES:                                          MORTGAGOR:

                                                    TP5, LLC.
Print Name: _Susanne Zablum_                        a Florida limited liability company

_Susan Hess_                                        By: _____
Print Name: _SUSAN HESS_                                 JEFFREY SISKIND, MANAGER


STATE OF FLORIDA                   )
                                   ) ss:
COUNTY OF _Palm Beach_             )

I HEREBY CERTIFY that on this _25th_ day of _July_, 2008 before me an officer duly authorized in the state aforesaid and in the county aforesaid to take acknowledgments, personally appeared JEFFREY SISKIND as Manager of TP5, LLC., a Florida limited liability company, on behalf of said company, who is/are personally known to me or who provided _____ as identification, and he/she acknowledged before me that he/she executed the same for the purpose therein expressed.

My commission expires:

                                                    _____
                                                    NOTARY PUBLIC
                                                    STATE OF FLORIDA

SUSANNE ZABLOUDIL
MY COMMISSION # DD 693073
EXPIRES: July 9, 2011
Bonded Thru Notary Public Underwriters

# EXHIBIT F

IN THE CIRCUIT COURT OF THE
FIFTEENTH JUDICIAL CIRCUIT, IN AND
FOR PALM BEACH COUNTY, FLORIDA.

GENERAL JURISDICTION DIVISION

CASE NO: 50-2010-CA-026014 XXXX MB

OPTIMUMBANK,

      Plaintiff,

vs.

TP5, LLC, a Florida limited liability company,
JEFFREY M. SISKIND, an individual,
GEORGE A. MALER, an individual, FIRST
INTRACOASTAL REALTY, LLC, a Florida
limited liability company, DESIGN CONTRACTING,
INC., a Florida corporation, MARINE ENGINE
EQUIPMENT COMPANY, a Florida corporation,
d/b/a THE GENERATOR PEOPLE, and ANY
UNKNOWN TENANTS IN POSSESSION,

      Defendants.

_____/

## ORDER ENFORCING
## ASSIGNMENT OF RENTS AND LEASES

THIS CAUSE came to be heard upon Plaintiff OptimumBank's motion to enforce an

assignment of rents and leases ("Motion"). Upon consideration of the Motion, examination of

the pleadings and papers on file, hearing the argument of counsel, and being further advised

in the premises, the Court ORDERS and ADJUDGES that:

    1.     Plaintiff's Motion is GRANTED.

    2.     Defendants, and any and all tenants occupying the property that is the subject

of this action, are directed to deliver any and all rents, leases or profits of any kind or

character derived from the mortgaged premises (except reasonable expenses paid by the

{M0160055.1}

CASE NO: 50-2010-CA-026014 XXXX MB

obligor defendants solely to protect, preserve and operate the real property), that are in Defendants' possession, custody or control, to Plaintiff's counsel, Andrew S. Feuerstein, Esq., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, L.L.P. 601 Brickell Key Drive, Suite 500, Miami, Florida 33131, by check payable to "OptimumBank" and to continue to do so on a continuing basis following entry of this order.

2.    Defendants are directed to deliver to Plaintiff's counsel, and file with the Court, on or before *December 7*    , 2010, and on the 1st day of each and every month thereafter:

a.    a financial statement itemizing each line item expense, as well as identifying amounts paid, the names of payees and the purpose(s) of each and every expense payment, otherwise comprising expenses that these Defendants assert are reasonable expenses solely to protect, preserve and operate the real property.  These Defendants shall also submit to Plaintiff's counsel documentation evidencing the method of payment of such expenses, including copies of checks (front and back) and wire transfers.

b.    an accounting of any and all security deposits and advance rents held for the benefit of the tenants together with an accurate accounting showing the amounts to be credited to each tenant account.

c.    an accounting of all income, including, but not limited to, rents received, from the real property, from commencement of suit through present day.

DONE AND ORDERED in Chambers, Palm Beach County, Florida, this ____ day of _____, 2010.

SIGNED & DATED

NOV 2 9 2010

_____
Circuit Court Judge

JUDGE JOHN J. HOY

CASE NO: 50-2010-CA-026014 XXXX MB

**Copies furnished to:**

Andrew S. Feuerstein, Esq.
Jones Walker, et al.
601 Brickell Ave., Ste. 500
Miami, FL  33131
 Counsel for Plaintiff


Design Contracting, Inc
Through its Registered Agent: Thomas S. Waldron, Jr.
3694 23rd Avenue South, Suite 1
Lake Worth, Florida 33461


First Intracoastal Realty, LLC
Through its Registered Agent: Corporation Service Company
1201 Hays Street
Tallahassee, Florida 32301


George A. Maler
10282 Heronwood Lane
West Palm Beach, Florida 33412


Marine Engine Equipment Company
d/b/a The Generator People
Through its Registered Agent: David R. Kelso
2 Rogart Circle
Boynton Beach, Florida 33426


Jeffrey M. Siskind, Esq.
525 South Flagler Drvie, Suite 500
West Palm Beach, Florida 33401
Counsel for Defendants TP5, LLC and Jeffrey M. Siskind

# EXHIBIT G

IN THE CIRCUIT COURT OF THE
FIFTEENTH JUDICIAL CIRCUIT, IN AND
FOR PALM BEACH COUNTY, FLORIDA.

GENERAL JURISDICTION DIVISION

CASE NO: 50-2010-CA-026014 XXXX MB

OPTIMUMBANK,

      Plaintiff,

vs.

TP5, LLC, a Florida limited liability company,
JEFFREY M. SISKIND, an individual,
GEORGE A. MALER, an individual, FIRST
INTRACOASTAL REALTY, LLC, a Florida
limited liability company, DESIGN CONTRACTING,
INC., a Florida corporation, MARINE ENGINE
EQUIPMENT COMPANY, a Florida corporation,
d/b/a THE GENERATOR PEOPLE, and ANY
UNKNOWN TENANTS IN POSSESSION,

      Defendants.

_____/

## ORDER FROM HEARING TO SHOW CAUSE

This cause, having come to be heard on December 20, 2010, pursuant to Fla. Stat. §

702.10(2), for the show-cause hearing for Defendant TP5, LLC to demonstrate why it should

not be required to make payments during the pendency of the proceedings, and the Court

having reviewed Defendant's pleading, heard argument of counsel and being fully advised of

its premises, it is hereby,

    ORDERED AND ADJUDGED as follows:

    1.    Defendant TP5, LLC is required to commence making monthly mortgage

payments to Plaintiff in the amount of _$4,315.88_, beginning January 1, 2011.

{M0166287.1}

CASE NO: 50-2010-CA-026014 XXXX MB

2.    Such payments shall continue until the conclusion of this case, sale of the property, or entry of further order of this Court, whichever shall occur first.

DONE AND ORDERED in Chambers, Palm Beach County, Florida, this ____ day of _____, 2010.

SIGNED & DATED

DEC 2 0 2010

_____
Circuit Court Judge

JUDGE JOHN J. HOY

**Copies furnished to:**

Stephanie Reed Traband, Esq.
Jones Walker, et al.
601 Brickell Ave., Ste. 500
Miami, FL 33131
 Counsel for Plaintiff

Design Contracting, Inc
Through its Registered Agent: Thomas S. Waldron, Jr.
3694 23rd Avenue South, Suite 1
Lake Worth, Florida 33461

First Intracoastal Realty, LLC
Through its Registered Agent: Corporation Service Company
1201 Hays Street
Tallahassee, Florida 32301

George A. Maler
10282 Heronwood Lane
West Palm Beach, Florida 33412

Marine Engine Equipment Company
d/b/a The Generator People
Through its Registered Agent: David R. Kelso
2 Rogart Circle
Boynton Beach, Florida 33426

Jeffrey M. Siskind, Esq.
525 South Flagler Drvie, Suite 500
West Palm Beach, Florida 33401
Counsel for Defendants TP5, LLC and Jeffrey M. Siskind

# EXHIBIT H

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT, IN AND FOR PALM BEACH COUNTY, FLORIDA.

GENERAL JURISDICTION DIVISION

CASE NO: 50-2010-CA-026014 XXXX MB

OPTIMUMBANK,

     Plaintiff,

vs.

TP5, LLC, a Florida limited liability company, JEFFREY M. SISKIND, an individual, GEORGE A. MALER, an individual, FIRST INTRACOASTAL REALTY, LLC, a Florida limited liability company, DESIGN CONTRACTING, INC., a Florida corporation, MARINE ENGINE EQUIPMENT COMPANY, a Florida corporation, d/b/a THE GENERATOR PEOPLE, and ANY UNKNOWN TENANTS IN POSSESSION,

     Defendants.

_____/

## STIPULATION AND AGREED ORDER

### Stipulation

Plaintiff, OptimumBank ("OPTIMUM") and defendants TP5, LLC, ("TP5"), Jeffrey M. Siskind ("Siskind") (collectively referred to as "Obligors"), stipulate and agree as follows:

1.    This is an action against:

    a.    TP5 upon a promissory note, as modified, in favor of OPTIMUM and to foreclose a mortgage, as modified, encumbering commercial real property located in Palm Beach County, Florida securing repayment of TP5's indebtedness to OPTIMUM, as is more specifically described in the mortgage and the pleadings; and

{M0207194.1}

CASE NO. 50-2010-CA-026014 XXXX MB

    b.     Siskind upon a personal guaranty of TP5's indebtedness to OPTIMUM.

2.    Obligors and OPTIMUM agree to forbear from further legal proceedings against each other in this case, subject to the terms and conditions of this stipulation.

3.    Obligors waive any defense, the right to assert any defense or right of setoff to the complaint that OPTIMUM filed against Obligors in this action or as to OPTIMUM's underlying claims against Obligors under the loan documents between them more specifically described in the pleadings, as modified, and all other and further loan documents between OPTIMUM and Obligors that are related to the loan upon which the complaint, as amended, is based, and that Obligors waive any claims, counterclaims, objections, rescission rights or claims of offset against OPTIMUM or the obligations of Obligors to pay the indebtedness described in this stipulation to OPTIMUM.

4.    As of March 31, 2011, Obligors are jointly and severally indebted to OPTIMUM, by virtue of the promissory note, mortgage and guaranty, in the following amounts:

| | | | |
|---|---|---|---|
| (1) | Principal. | $ | 1,035,811.75 |
| (2) | Payment Credit. | ($ | 8,631.76) |
| (3) | Interest at the non-default rate through September 9, 2010. | $ | 14,330.89 |
| (4) | Interest at the default rate from September 10, 2010 through March 31, 2011. | $ | 141,140.00 |
| (5) | Late charges. | $ | 3,711.59 |
| (6) | Filing and recording fees. | $ | 1,990.00 |
| (7) | Service of process. | $ | 450.00 |
| (8) | Title search. | $ | 350.00 |
| (9) | Attorney's fees. | $ | 15,000.00 |

CASE NO. 50-2010-CA-026014 XXXX MB

Total through March 31, 2011.        $  1,204,152.47

The per diem is $695.2709.

5.    OPTIMUM shall refrain from obtaining a final judgment of foreclosure and a judgment for the indebtedness described in ¶ 4 above, and waive its rights to collect rents pursuant to the Order Enforcing Assignment of Leases and Rents entered on November 29, 2010, a copy of which is attached hereto as Exhibit "A.," and mortgage payments pursuant to the Order From Hearing to Show Cause, entered on December 20, 2010, a copy of which is attached hereto as Exhibit "B," so long as:

a.    On or before April 11, 2011, OPTIMUM's undersigned counsel receives this stipulation, fully executed by Obligors and notarized;

b.    Obligors pay OPTIMUM the outstanding principal balance of 1,035,811.75 due and owing to OPTIMUM as set forth in ¶ 4 over a 5 year period bearing interest at 4% (interest only) for the first year, bearing interest at 5% (interest only) for the second year and bearing interest at 5% (principal and interest) based on a 25 year amortization schedule for the third, fourth and fifth years with a Final Balloon payment of the remaining principal and accrued interest, so that (i) commencing on May 1, 2011 and on the first day of every month thereafter through and including April 1, 2012, Obligors will pay OPTIMUM $3452.71, (ii) commencing on May 1, 2012 and on the first day of every month thereafter through and including April 1, 2013, Obligors will pay OPTIMUM $4315.88, (iii) commencing on May 1, 2013 and on the first day of every month thereafter through and including April 1, 2016, Obligors will pay OPTIMUM $6055.25, and (iv) on May 1, 2016, Obligors will make a Balloon Final Payment consisting of (a) $968,405.36 principal balance, (b) $4035.02 in accrued

CASE NO. 50-2010-CA-026014 XXXX MB

interest for April 2016, and (c) $43,134.56 in previously unpaid non-default interest through March 31, 2011.

     c.     Obligors make all payments pursuant to ¶ 5b within no later than 30 days of the due date.

     d.     Obligors pay any and all delinquent real estate taxes on or before June 1, 2011 and provide OPTIMUM with evidence of any and all payments, escrow 2011 real estate taxes with OPTIMUM with monthly payments in the amount of $1,915.00 beginning May 1, 2011, and escrow subsequent real estate taxes with OPTIMUM monthly during the pendency of the stipulation, amounts of escrow payments to be determined by OPTIMUM in its sole and unfettered discretion upon a yearly escrow analysis.

     e.     Obligors complete and furnish to OPTIMUM, on an annual basis, on or within ten (10) days after their respective due dates, all required business and personal tax returns, with all schedules attached.

     f.     Siskind provides annually a personal financial statement in a form satisfactory to OPTIMUM beginning with his 2010 personal financial statement on or before May 1, 2011 and on or before the first day of April in subsequent years.

     g.     On or before May 1, 2011, Obligors provide OPTIMUM with evidence of a payment arrangement for payment of delinquent condominium maintenance fees that is satisfactory to OPTIMUM.

     h.     Obligors keep all condominium maintenance fees current and provide evidence to OPTIMUM on a quarterly basis on or before the 15th day of each quarter of the year that all condominium maintenance fees are current.

CASE NO. 50-2010-CA-026014 XXXX MB

6.      All payments described in ¶ 5(a-d) above shall be made payable or provided to OptimumBank, 2477 East Commercial Boulevard, Fort Lauderdale, Florida 33308 unless otherwise instructed by OPTIMUM in writing.

7.      All other performance described in ¶ 5(e-h) not addressed in ¶ 6 above shall be provided to OptimumBank, 2477 East Commercial Boulevard, Fort Lauderdale, Florida 33308 unless otherwise instructed by OPTIMUM in writing.

8.      If Obligors fail to fully perform any act, including, but not limited to, annually furnishing OPTIMUM all required business and personal tax returns (including all schedules) and personal financial statements, or make payment in the full amount, at the time required and in the form specified by ¶¶ 5-7 above, (hererinafter the "Stipulation Default"), OPTIMUM shall have the immediate and unfettered right to proceed, ex parte and without further notice, upon this stipulation and an affidavit by OPTIMUM or its counsel attesting to non-payment or failure to perform, and the court shall enter a final judgment of foreclosure and a final judgment, against Obligors for monetary damages, for the full amount of the indebtedness described in ¶ 4 above, in the form attached to this stipulation, with default interest at the maximum rate allowed by law through the date of the judgment, less credit for payments made pursuant to ¶ 5.  Postjudgment interest shall accrue at the prevailing interest rate.

9.      Upon default, Obligors may remain on the subject property for no longer than 90 days if, and only if, Obligors pay reasonable rent for the 90 day period, the payment amount to be determined by the Receiver in his sole and unfettered discretion, within five (5) business days of written notice from the Receiver or OPTIMUM, with the payment amount being no less than the total of three months of principal and interest payments at 5% based on a 25 year amortization schedule, three months of real estate tax escrows based on the monthly escrow

CASE NO. 50-2010-CA-026014 XXXX MB

payments required to be paid immediately prior to default and payment of any applicable condominium fees, and OPTIMUM receives any and all other rents being collected by Obligors.

10.    Obligors and OPTIMUM agree that upon the entry of this stipulation, Kenneth Marlin, the Receiver appointed in the instant matter, shall remain as Receiver but Receiver and his agents and/or assigns shall refrain from rendering services to or receiving compensation from the parties until and unless the Obligors default on this stipulation or OPTIMUM sends a written request to the Receiver requesting its services based upon a good faith concern.

11.    To induce OPTIMUM to enter into this stipulation, Obligors, for themselves and for each of their agents, attorneys, successors, predecessors, affiliates, members, managers, shareholders, officers, directors, heirs, personal representatives and assigns, release OPTIMUM, and their respective predecessors, successors, assigns, officers, directors, shareholders, partners, employees, agents, affiliates, and attorneys (collectively, "Affiliates"), jointly and severally, from any and all claims, counterclaims, demands, damages, debts, agreements, covenants, suits, contracts, obligations, liabilities, accounts, offsets, rights, actions and causes of action for contribution and indemnity, whether arising at law or in equity (including without limitation, claims of fraud, duress, mistake, tortious interference, usury, or control), whether presently possessed or possessed in the future, whether known or unknown, whether liability be direct or indirect, liquidated or unliquidated, whether presently accrued or to accrue hereafter, whether absolute or contingent, foreseen or unforeseen, and whether or not asserted, for or because of or as a result of any act, omission, communication, transaction, occurrence, representation, promise, damage, breach of contract, fraud, violation of any statute or law, commission of any tort, or any other matter whatsoever or thing done, omitted or suffered to be done by OPTIMUM or its Affiliates, which has occurred in whole or in part, or was initiated at any time from the beginning

CASE NO. 50-2010-CA-026014 XXXX MB

of time up to and immediately preceding the moment of the execution of this stipulation. Obligors agree that the foregoing release and waiver is intended to be as broad and inclusive as permitted by the laws of the State of Florida.

12.     OPTIMUM and Obligors each had the benefit of counsel in connection with executing this stipulation.   OPTIMUM and Obligors execute this stipulation knowingly and voluntarily after undertaking a thorough investigation and consideration of all the known relevant facts and circumstances surrounding this action.

13.     OPTIMUM and Obligors have entered into this stipulation without undue influence, fraud, coercion, duress, misrepresentation or restraint having been practiced upon them in connection with the stipulation.

14.     Obligors waive any and all rights to contest or challenge the allegations of the complaint, as amended, or to appeal any order or judgment entered in this action, and any right to appeal any such order or judgment.

15.     OPTIMUM and Obligors consent to entry of the agreed order that is attached to this stipulation and to the entry of each and every order and judgment, if any, in the form attached to this stipulation.

16.     This entry of this stipulation by OPTIMUM is subject to the approval of OPTIMUM's Board of Directors.

17.     This stipulation may be executed in several counterparts and all counterparts so executed shall constitute one agreement binding on all the parties hereto, notwithstanding that all the parties are not signatories to the original or the same counterpart.  A facsimile signature shall be binding on the executing party.

18.    The invalidity, illegality or unenforceability of any provision of this stipulation, pursuant to judicial decree or otherwise, shall not affect the validity or enforceability of any other provision of this stipulation, each of which shall remain in full force and effect.  Upon default by Obligors or any of them under this stipulation, all terms of this stipulation shall survive other than those terms obligating OPTIMUM to forbear.  The terms of this stipulation shall also survive satisfaction of all of the indebtedness of Obligors to OPTIMUM.

19.    No failure of any party to exercise any power given under this stipulation or to insist upon strict compliance with any of the terms or conditions specified in this stipulation shall constitute a waiver of such party's right to demand strict compliance with the terms of this stipulation or the loan documents.

20.    Nothing contained in this stipulation shall be deemed or construed by the parties hereto or by any third party to create the relationship of principal and agent, partners, joint venturers, or of any association whatsoever between OPTIMUM and Obligors other than the arms-length relationship of creditor and debtors.

21.    This stipulation is intended by the parties as a final expression of their agreement with respect to the subject matter hereof and as a complete and exclusive statement of the terms and conditions thereof, superseding and replacing all prior negotiations between the parties hereto, or any of them, whether written or oral.  Any provision of this agreement may be changed, waived or terminated only by written instrument signed by the party against whom the change, waiver, or termination is sought to be enforced.  Each of the parties to this agreement acknowledges that no other party, or agent or attorney of any other party, has made any promise, representation, or warranty whatsoever, express or implied, not contained herein concerning the subject matter hereof, to induce the other party to execute this stipulation or any of the other

CASE NO. 50-2010-CA-026014 XXXX MB

documents referred to herein, and each party acknowledges that he or it has not executed this stipulation or such other documents in reliance upon any such promise, representation or warranty not contained herein. The parties to this stipulation acknowledge that all of the terms of this stipulation were negotiated at arm's length and that this stipulation and all documents executed in connection with it were prepared and executed without undue influence of any kind exerted by any party upon any other party.

22.    It is the intent of the parties to this stipulation that the stipulation shall not in any way adversely affect the loan documents between OPTIMUM and Obligors. To the extent this stipulation or any provision hereof shall be construed by a court of competent jurisdiction as subordinating the lien priority of the loan documents to any claim which would otherwise be subordinate thereto (and provided that ruling is not appealed or appealable), such provision or provisions shall be void and of no force and effect; except that this stipulation shall constitute, as to any provision so construed, a lien upon the collateral subordinate to such third person's claims, incorporating by reference the terms of the loan. The loan documents shall then be enforced pursuant to the terms therein contained, independent of any such provisions; provided, however, that notwithstanding the foregoing, OPTIMUM and Obligors, as between themselves, shall be bound by all terms and conditions hereof until all indebtedness owing to OPTIMUM shall have been paid in full. This stipulation is not a novation of any of the existing lending documents. The parties agree that except as modified in this stipulation, all terms, conditions, rights and obligations under the lending documents shall otherwise remain in full force and effect as originally written and agreed. In the event of default by Obligors, the lending documents and this stipulation shall be construed to give OPTIMUM the greatest possible cumulative rights and remedies. Therefore, should there be any apparent conflict between any lending document and

CASE NO. 50-2010-CA-026014 XXXX MB

this stipulation or under any other agreement, the documents shall be construed to give OPTIMUM the greatest possible cumulative rights and remedies.

23.    This stipulation shall be construed, interpreted, enforced and governed by and in accordance with the laws of the State of Florida, excluding the principles thereof governing conflicts of law.

24.    This stipulation shall be binding upon, and shall inure to the benefit of, the respective successors and assigns of the parties.

25.    Notwithstanding anything to the contrary contained in this stipulation, OPTIMUM may continue to litigate with any defendants other than Obligors.

26.    Time is of the essence of each provision of this stipulation.

CASE NO. 50-2010-CA-026014 XXXX MB

**WHEREFORE,** the parties respectfully request that the court enter the attached agreed order approving the stipulation.

Dated: _APRIL 02, 2011_

JONES, WALKER, WAECHTER, POITEVENT,
CARRERE & DENEGRE, L.L.P.
Counsel for Optimum Trust, NA
Suite 500
601 Brickell Key Drive                                        OPTIMUMBANK
Miami, FL 33131
Tel. (305) 679-5700
Facsimile: (305) 679-5710

By: _Andrew S. Feuerstein_          By: _Richard L. Browdy_
    Andrew S. Feuerstein, Esq.          Name: _RICHARD L. BROWDY_
    Fla. Bar No. 399530                 Title: _PRESIDENT_


Jeffrey M. Siskind, Esq.            **TP5, LLC,**
525 South Flagler Drive, Suite 500  A Florida Limited Liability Company
West Palm Beach, Florida 33401
Tel.: (954) 832-7720
Facsimile: (954) 832-7668


By: _____      By: _____
    Jeffrey M. Siskind, Esq.           Name:
    Fla. Bar No. 138746                Title:


                                   _____
                                   Jeffrey M. Siskind, individually

{M0207194.1}11

CASE NO. 50-2010-CA-026014 XXXX MB

STATE OF FLORIDA                    )
                                   : ss.
COUNTY OF Palm Beach               )

The foregoing instrument was acknowledged before me on _April  11_, 2011,
by _Jeff Sistrunk_, as _Managing Member_ of TP5, LLC a Florida limited liability
company, on behalf of the company. He/she is personally known to me or has produced _____
_____ (type of identification) as identification and did not take an oath.

_____
Signature of person taking acknowledgment

_TODD ELLIS_
Name of acknowledger typed, printed or stamped

_Notary Public_____
Title or rank

TODD ELLIS
MY COMMISSION # EE29268
EXPIRES: September 26, 2014
FL Notary Discount Assoc. Co.

CASE NO. 50-2010-CA-026014 XXXX MB

STATE OF FLORIDA          )
                          : ss.
COUNTY OF Palm Beach      )

The foregoing instrument was acknowledged before me on ___April 11___, 2011, by Jeffrey M. Siskind, individually. (He/she is personally known to me or has produced _____ _____ (type of identification) as identification and did not take an oath.

_____
Signature of person taking acknowledgment

TODD ELLIS
_____
Name of acknowledger typed, printed or stamped

TODD ELLIS
MY COMMISSION # EE29268
EXPIRES: September 26, 2014
FL Notary Discount Assoc. Co.
1-800-3-NOTARY

_Notary Public_____
Title or rank

{M0207194.1}13

# EXHIBIT "A"

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT, IN AND FOR PALM BEACH COUNTY, FLORIDA.

GENERAL JURISDICTION DIVISION

CASE NO: 50-2010-CA-026014 XXXX MB

OPTIMUMBANK,

     Plaintiff,

vs.

TP5, LLC, a Florida limited liability company, JEFFREY M. SISKIND, an individual, GEORGE A. MALER, an individual, FIRST INTRACOASTAL REALTY, LLC, a Florida limited liability company, DESIGN CONTRACTING, INC., a Florida corporation, MARINE ENGINE EQUIPMENT COMPANY, a Florida corporation, d/b/a THE GENERATOR PEOPLE, and ANY UNKNOWN TENANTS IN POSSESSION,

     Defendants.

_____/

## ORDER ENFORCING ASSIGNMENT OF RENTS AND LEASES

THIS CAUSE came to be heard upon Plaintiff OptimumBank's motion to enforce an assignment of rents and leases ("Motion"). Upon consideration of the Motion, examination of the pleadings and papers on file, hearing the argument of counsel, and being further advised in the premises, the Court ORDERS and ADJUDGES that:

1.    Plaintiff's Motion is GRANTED.

2.    Defendants, and any and all tenants occupying the property that is the subject of this action, are directed to deliver any and all rents, leases or profits of any kind or character derived from the mortgaged premises (except reasonable expenses paid by the

{M0160055.1}

CASE NO: 50-2010-CA-026014 XXXX MB

obligor defendants solely to protect, preserve and operate the real property), that are in Defendants' possession, custody or control, to Plaintiff's counsel, Andrew S. Feuerstein, Esq., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, L.L.P. 601 Brickell Key Drive, Suite 500, Miami, Florida 33131, by check payable to "OptimumBank" and to continue to do so on a continuing basis following entry of this order.

   2.       Defendants are directed to deliver to Plaintiff's counsel, and file with the Court, on or before *December 7*, 2010, and on the 1st day of each and every month thereafter:

   a.       a financial statement itemizing each line item expense, as well as identifying amounts paid, the names of payees and the purpose(s) of each and every expense payment, otherwise comprising expenses that these Defendants assert are reasonable expenses solely to protect, preserve and operate the real property. These Defendants shall also submit to Plaintiff's counsel documentation evidencing the method of payment of such expenses, including copies of checks (front and back) and wire transfers.

   b.       an accounting of any and all security deposits and advance rents held for the benefit of the tenants together with an accurate accounting showing the amounts to be credited to each tenant account.

   c.       an accounting of all income, including, but not limited to, rents received, from the real property, from commencement of suit through present day.

   DONE AND ORDERED in Chambers, Palm Beach County, Florida, this _____ day of _____, 2010.

_____
Circuit Court Judge

SIGNED & DATED
NOV 2 9 2010
JUDGE JOHN J. HOY

{M0160055.1}2

CASE NO: 50-2010-CA-026014 XXXX MB

**Copies furnished to:**

Andrew S. Feuerstein, Esq.
Jones Walker, et al.
601 Brickell Ave., Ste. 500
Miami, FL 33131
Counsel for Plaintiff

Design Contracting, Inc
Through its Registered Agent: Thomas S. Waldron, Jr.
3694 23rd Avenue South, Suite 1
Lake Worth, Florida 33461

First Intracoastal Realty, LLC
Through its Registered Agent: Corporation Service Company
1201 Hays Street
Tallahassee, Florida 32301

George A. Maler
10282 Heronwood Lane
West Palm Beach, Florida 33412

Marine Engine Equipment Company
d/b/a The Generator People
Through its Registered Agent: David R. Kelso
2 Rogart Circle
Boynton Beach, Florida 33426

Jeffrey M. Siskind, Esq.
525 South Flagler Drvie, Suite 500
West Palm Beach, Florida 33401
Counsel for Defendants TP5, LLC and Jeffrey M. Siskind

# EXHIBIT "B"

CASE NO. 50-2010-CA-026014 XXXX MB

IN THE CIRCUIT COURT OF THE
FIFTEENTH JUDICIAL CIRCUIT, IN AND
FOR PALM BEACH COUNTY, FLORIDA.

GENERAL JURISDICTION DIVISION

CASE NO: 50-2010-CA-026014 XXXX MB

OPTIMUMBANK,

      Plaintiff,

vs.

TP5, LLC, a Florida limited liability company,
JEFFREY M. SISKIND, an individual,
GEORGE A. MALER, an individual, FIRST
INTRACOASTAL REALTY, LLC, a Florida
limited liability company, DESIGN CONTRACTING,
INC., a Florida corporation, MARINE ENGINE
EQUIPMENT COMPANY, a Florida corporation,
d/b/a THE GENERATOR PEOPLE, and ANY
UNKNOWN TENANTS IN POSSESSION,

      Defendants.

_____/

## ORDER FROM HEARING TO SHOW CAUSE

This cause, having come to be heard on December 20, 2010, pursuant to Fla. Stat. §

702.10(2), for the show-cause hearing for Defendant TP5, LLC to demonstrate why it should

not be required to make payments during the pendency of the proceedings, and the Court

having reviewed Defendant's pleading, heard argument of counsel and being fully advised of

its premises, it is hereby,

ORDERED AND ADJUDGED as follows:

    1.    Defendant TP5, LLC is required to commence making monthly mortgage

payments to Plaintiff in the amount of _____$4,315.88_____, beginning January 1, 2011.

{M0166287.1}

CASE NO: 50-2010-CA-026014 XXXX MB

2.        Such payments shall continue until the conclusion of this case, sale of the

property, or entry of further order of this Court, whichever shall occur first.

DONE AND ORDERED in Chambers, Palm Beach County, Florida, this ____ day of

_____, 2010.

SIGNED & DATED

DEC 2 0 2010

JUDGE JOHN J. HOY

_____
Circuit Court Judge

Copies furnished to:

Stephanie Reed Traband, Esq.
Jones Walker, et al.
601 Brickell Ave., Ste. 500
Miami, FL 33131
 Counsel for Plaintiff

Design Contracting, Inc
Through its Registered Agent: Thomas S. Waldron, Jr.
3694 23rd Avenue South, Suite 1
Lake Worth, Florida 33461

First Intracoastal Realty, LLC
Through its Registered Agent: Corporation Service Company
1201 Hays Street
Tallahassee, Florida 32301

George A. Maler
10282 Heronwood Lane
West Palm Beach, Florida 33412

Marine Engine Equipment Company
d/b/a The Generator People
Through its Registered Agent: David R. Kelso
2 Rogart Circle
Boynton Beach, Florida 33426

Jeffrey M. Siskind, Esq.
525 South Flagler Drvie, Suite 500
West Palm Beach, Florida 33401
Counsel for Defendants TP5, LLC and Jeffrey M. Siskind

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT, IN AND FOR PALM BEACH COUNTY, FLORIDA.

GENERAL JURISDICTION DIVISION

CASE NO: 50-2010-CA-026014 XXXX MB

OPTIMUMBANK,

     Plaintiff,

vs.

TP5, LLC, a Florida limited liability company, JEFFREY M. SISKIND, an individual, GEORGE A. MALER, an individual, FIRST INTRACOASTAL REALTY, LLC, a Florida limited liability company, DESIGN CONTRACTING, INC., a Florida corporation, MARINE ENGINE EQUIPMENT COMPANY, a Florida corporation, d/b/a THE GENERATOR PEOPLE, and ANY UNKNOWN TENANTS IN POSSESSION,

     Defendants.

_____/

## AGREED ORDER APPROVING STIPULATION

This cause came before the court upon the stipulation between plaintiff, OPTIMUMBANK, and defendants TP5, LLC and Jeffrey M. Siskind. Upon consideration, the court ~~approves and adopts~~ enters the stipulation as an order of the court and retains jurisdiction to enforce the stipulation's terms.

Ordered in chambers at Palm Beach County, Florida, on April 2/ , 2011.

_____
Circuit Court Judge

Copies furnished to:
Andrew S. Feuerstein, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, L.L.P., 601 Brickell Key Drive, Suite 500, Miami, Florida 33131.
Jeffrey M. Siskind, Esq., 525 South Flagler Drive, Suite 500, West Palm Beach, Florida 33401.

CASE NO. 50-2010-CA-026014 XXXX MB

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT, IN AND FOR PALM BEACH COUNTY, FLORIDA.

GENERAL JURISDICTION DIVISION

CASE NO: 50-2010-CA-026014 XXXX MB

OPTIMUMBANK,

      Plaintiff,

vs.

TP5, LLC, a Florida limited liability company, JEFFREY M. SISKIND, an individual, GEORGE A. MALER, an individual, FIRST INTRACOASTAL REALTY, LLC, a Florida limited liability company, DESIGN CONTRACTING, INC., a Florida corporation, MARINE ENGINE EQUIPMENT COMPANY, a Florida corporation, d/b/a THE GENERATOR PEOPLE, and ANY UNKNOWN TENANTS IN POSSESSION,

      Defendants.

_____/

## FINAL JUDGMENT OF FORECLOSURE AND FOR MONETARY DAMAGES IN IN FAVOR OF PLAINTIFF UPON DEFAULT OF STIPULATION

This cause came to be heard upon the stipulation entered into between the Plaintiff OptimumBank ("Optimum") and Defendants TP5, LLC ("TP5") and Jeffrey M. Siskind ("Siskind") and adopted by this Court. Upon consideration of the stipulation, examination of the pleadings and papers on file, and being further advised in the premises, the court finds as follows:

    1.    Service of process has been duly and regularly obtained over defendants.

    2.    There is due and owing to plaintiff the following:

CASE NO. 50-2010-CA-026014 XXXX MB

| | | | |
|---|---|---|---|
| (1) | Principal. | $ | 1,035,811.75 |
| (2) | Payment Credit. | ($ | 8,631.76) |
| (3) | Interest at the non-default rate through. September 9, 2010. | $ | 14,330.89 |
| (4) | Interest at the default rate from September 10, 2010 through March 31, 2011. | $ | 141,140.00 |
| (5) | Late charges. | $ | 3,711.59 |
| (6) | Filing and recording fees. | $ | 1,990.00 |
| (7) | Service of process. | $ | 450.00 |
| (8) | Title search. | $ | 350.00 |
| (9) | Attorney's fees. | $ | 15,000.00 |
| | Total through March 31, 2011. | $ | 1,204,152.47 |

The per diem is $695.2709.

3.     The grand total amount referenced in Paragraph 2 shall bear interest at the prevailing legal rate of interest.

4.     Plaintiff, whose address is 2477 East Commercial Boulevard, Fort Lauderdale, Florida 33308, holds a lien for the grand total specified in Paragraph 2 herein. The lien of the plaintiff is superior in dignity to any right, title, interest or claim of the defendants and all persons, corporations, or other entities claiming by, through, or under the defendants or any of them and the property will be sold free and clear of all claims of the defendants. The plaintiff's lien encumbers the subject property located in Palm Beach County, Florida and described as:

CONDOMUNIUM UNITS CCU3A2, CCU3B2 AND CCU3C2, TRUMP PLAZA OF THE PALM BEACHES, A CONDOMINIUM, ACCORDING TO THE DECLARATION OF CONDOMINIUM THEREOF, RECORDED IN OFFICIAL RECORDS BOOK 4800, PAGE 457, WITH ALL EXHIBITS AND AMENDMENTS THEREOF, PUBLIC RECORDS OF PALM BEACH COUNTY, FLORIDA, AND ANY AND ALL AMENDMENTS THERETO,

CASE NO. 50-2010-CA-026014 XXXX MB

TOGETHER WITH AN UNDIVIDED INTEREST IN THE COMMON
ELEMENTS APPURTENANT THERETO AS SET FORTH IN SAID
DECLARATION, TOGETHER WITH AN UNDIVIDED 16.93%
INTEREST IN UNIT NO. CCU3 AS SET FORTH IN THE
DECLARATION OF TENANCY-IN-COMMON AGREEMENT FOR
COMMERCIAL UNIT PARKING FACILITIES AS RECORDED IN
OFFICIAL RECORDS BOOK 19010 PAGE 70, PUBLIC RECORDS OF
PALM BEACH COUNTY, FLORIDA.

5.     If the grand total amount with interest at the rate described in Paragraph 3 and all

costs accrued subsequent to this judgment are not paid, the Clerk of the Court shall sell the

subject property at public sale on _____ _____, at _____ A.M. to the highest

bidder for cash, except as prescribed in Paragraph 6, at a public sale, to the highest and best

bidder, for cash, at www.mypalmbeachclerk.clerkauction.com, after having first given notice as

required by Section 45.031, Florida Statutes.  The Clerk shall not conduct the sale in the absence

of the plaintiff or its representative.

6.     Plaintiff shall advance the subsequent costs of this action and shall be reimbursed

for them by the Clerk if plaintiff is not the purchaser of the property for sale.  If plaintiff is the

purchaser, the Clerk shall credit plaintiff's bid with the total sum with interest and costs accruing

subsequent to this judgment, or such part of it, as is necessary to pay the bid in full.  The Clerk

shall receive the service charge imposed in Section 45.031, Florida Statutes, for services in

making, recording, and certifying the sale and title that shall be assessed as costs.

7.     On filing the certificate of sale, any defendant's right of redemption as prescribed

by Florida Statutes, Section 45.0315, shall be terminated.

8.     On filing the certificate of title, the clerk shall distribute the proceeds of sale, so

far as they are sufficient, by paying:  first, all of the plaintiff's costs; second, documentary

stamps affixed to the certificate; third, plaintiff's attorneys' fees; and fourth, the total sum due to

CASE NO. 50-2010-CA-026014 XXXX MB

the plaintiff, less the items paid, plus interest at the rate prescribed in paragraph 2 from this date to the date of the sale. During the sixty (60) days after the clerk issues the certificate of disbursements, the clerk shall hold the surplus pending further order of this court.

9.     On filing the certificate of title, defendants and all persons claiming under or against defendants since the filing of the notice of lis pendens shall be foreclosed of all estate or claim in the property and the purchaser at sale shall be let into possession of the property.

10.     The court finds that the hours reflected in the affidavits submitted were reasonably expended by plaintiff's counsel in connection with prosecuting the claim and that an hourly rate of $255.00 is appropriate. PLAINTIFF'S COUNSEL REPRESENTS THAT THE ATTORNEY FEE AWARDED DOES NOT EXCEED ITS CONTRACT FEE WITH THE PLAINTIFF. The Court finds that there are no reduction or enhancement factors for consideration by the Court pursuant to Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985).

11.     NOTICE PURSUANT TO AMENDMENT TO SECTION 45.031, FLA. ST. (2006).

IF THE PROPERTY IS SOLD AT PUBLIC AUCTION, THERE MAY BE ADDITIONAL MONEY FROM THE SALE AFTER PAYMENT OF PERSONS WHO ARE ENTITLED TO BE PAID FROM THE SALE PROCEEDS PURSUANT TO THIS FINAL JUDGMENT.

IF YOU ARE A SUBORDINATE LIENHOLDER CLAIMING A RIGHT TO FUNDS REMAINING AFTER THE SALE, YOU MUST FILE A CLAIM WITH THE CLERK NO LATER THAN SIXTY (60) DAYS AFTER THE SALE. IF YOU FAIL TO FILE A CLAIM, YOU WILL NOT BE ENTITLED TO ANY REMAINING FUNDS.

CASE NO. 50-2010-CA-026014 XXXX MB

12.    IF YOU ARE THE PROPERTY OWNER, YOU MAY CLAIM THESE FUNDS YOURSELF. YOU ARE NOT REQUIRED TO HAVE A LAWYER OR ANY OTHER REPRESENTATION AND YOU DO NOT HAVE TO ASSIGN YOUR RIGHTS TO ANYONE ELSE IN ORDER FOR YOU TO CLAIM ANY MONEY TO WHICH YOU ARE ENTITLED. PLEASE CHECK WITH THE CLERK OF BROWARD COUNTY WITHIN TEN (10) DAYS AFTER THE SALE TO SEE IF THERE IS ADDITIONAL MONEY FROM THE FORECLOSURE SALE THAT THE CLERK & COMPTROLLER HAS IN THE REGISTRY OF THE COURT.

13.    The plaintiff may assign the judgment and credit bid by the filing of an assignment without further order of the court.

14.    The court retains jurisdiction of this action to enter further orders that are proper, including, without limitation, writs of possession and deficiency judgments.

Ordered at Palm Beach County, Florida, on _____, 2011.

_____
Circuit Court Judge

# COMPOSITE EXHIBIT I

IN THE CIRCUIT COURT OF THE FIFTEENTH
JUDICIAL CIRCUIT, IN AND FOR PALM
BEACH COUNTY, FLORIDA.

GENERAL JURISDICTION DIVISION

CASE NO: 50-2010-CA-026014 XXXX MB

OPTIMUMBANK,

     Plaintiff,

vs.

TP5, LLC, a Florida limited liability
company, JEFFREY M. SISKIND, an
individual, GEORGE A. MALER, an
individual, FIRST INTRACOASTAL
REALTY, LLC, a Florida limited liability
company, DESIGN CONTRACTING, INC.,
a Florida corporation, MARINE ENGINE
EQUIPMENT COMPANY, a Florida
corporation, d/b/a THE GENERATOR
PEOPLE, and ANY UNKNOWN TENANTS
IN POSSESSION,

     Defendants.

_____/

## FINAL JUDGMENT OF FORECLOSURE AND FOR MONETARY DAMAGES IN FAVOR OF PLAINTIFF UPON DEFAULT OF STIPULATION

This cause came before the Court upon the stipulation entered into between the Plaintiff

OptimumBank ("Optimum") and Defendants TP5, LLC ("TP5") and Jeffrey M. Siskind

("Siskind") and adopted by this Court, and the affidavits by Richard L. Browdy of

OptimumBank and Ronald D. P. Bruckmann, Esq. as to TP5 and Siskind's default under the

stipulation. Upon consideration of the stipulation and agreed order, the affidavits as to default,

examination of the pleadings and papers on file, and being further advised in the premises, the

court finds as follows:

    1.     Service of process has been duly and regularly obtained over defendants.

CASE NO: 50-2010-CA-026014 XXXX MB

2.    There is due and owing to plaintiff the following:

| | | | |
|---|---|---|---:|
| (1) | Principal. | $ | 1,035,811.75 |
| (2) | Payment Credit. | $ | [8,631.76] |
| (3) | Interest at the non-default rate through. September 9, 2010. | $ | 14,330.89 |
| (4) | Interest at the default rate from September 10, 2010 through January 9, 2013. ($695.2709 per diem) | $ | 593,066.08 |
| (5) | Late charges. | $ | 3,711.59 |
| (6) | Filing and recording fees. | $ | 1,990.00 |
| (7) | Service of process. | $ | 450.00 |
| (8) | Title search. | $ | 350.00 |
| (9) | Attorney's fees. | $ | 15,000.00 |
| (10) | Credit for payments made pursuant to ¶5 of stipulation. (Consisting of $95,116.23 in interest; and $2,585.77 in escrow surplus) | $ | [97,702.00] |
| | Total through January 9, 2013. | $ | **1,558,376.55** |

3.    The grand total amount referenced in Paragraph 2 shall bear interest at the prevailing legal rate of interest.

4.    Plaintiff, whose address is 2477 East Commercial Boulevard, Fort Lauderdale, Florida 33308, holds a lien for the grand total specified in Paragraph 2 herein. The lien of the plaintiff is superior in dignity to any right, title, interest or claim of the defendants and all persons, corporations, or other entities claiming by, through, or under the defendants or any of them and the property will be sold free and clear of all claims of the defendants. The plaintiff's lien encumbers the subject property located in Palm Beach County, Florida and described as:

{M0479691.1}            2

CASE NO: 50-2010-CA-026014 XXXX MB

CONDOMINIUM UNITS CCU3A2, CCU3B2 AND CCU3C2, TRUMP PLAZA OF THE PALM BEACHES, A CONDOMINIUM, ACCORDING TO THE DECLARATION OF CONDOMINIUM THEREOF, RECORDED IN OFFICIAL RECORDS BOOK 4800, PAGE 457, WITH ALL EXHIBITS AND AMENDMENTS THEREOF, PUBLIC RECORDS OF PALM BEACH COUNTY, FLORIDA, AND ANY AND ALL AMENDMENTS THERETO, TOGETHER WITH AN UNDIVIDED INTEREST IN THE COMMON ELEMENTS APPURTENANT THERETO AS SET FORTH IN SAID DECLARATION, TOGETHER WITH AN UNDIVIDED 16.93% INTEREST IN UNIT NO. CCU3 AS SET FORTH IN THE DECLARATION OF TENANCY-IN-COMMON AGREEMENT FOR COMMERCIAL UNIT PARKING FACILITIES AS RECORDED IN OFFICIAL RECORDS BOOK 19010, PAGE 70, PUBLIC RECORDS OF PALM BEACH COUNTY, FLORIDA.

5.    If the grand total amount with interest at the rate described in Paragraph 3 and all costs accrued subsequent to this judgment are not paid, the Clerk of the Court shall sell the subject property at public sale on _February 25 2013_, at _10:00_ A.M. to the highest bidder for cash, except as prescribed in Paragraph 6, at a public sale, to the highest and best bidder, for cash, at www.mypalmbeachclerk.clerkauction.com, after having first given notice as required by Section 45.031, Florida Statutes.  The Clerk shall not conduct the sale in the absence of the plaintiff or its representative.

6.    Plaintiff shall advance the subsequent costs of this action and shall be reimbursed for them by the Clerk if plaintiff is not the purchaser of the property for sale.  If plaintiff is the purchaser, the Clerk shall credit plaintiff's bid with the total sum with interest and costs accruing subsequent to this judgment, or such part of it, as is necessary to pay the bid in full.  The Clerk shall receive the service charge imposed in Section 45.031, Florida Statutes, for services in making, recording, and certifying the sale and title that shall be assessed as costs.

7.    On filing the certificate of sale, any defendant's right of redemption as prescribed by Florida Statutes, Section 45.0315, shall be terminated.

CASE NO: 50-2010-CA-026014 XXXX MB

8.    On filing the certificate of title, the clerk shall distribute the proceeds of sale, so far as they are sufficient, by paying:  first, all of the plaintiff's costs; second, documentary stamps affixed to the certificate; third, plaintiff's attorneys' fees; and fourth, the total sum due to the plaintiff, less the items paid, plus interest at the rate prescribed in paragraph 2 from this date to the date of the sale.  During the sixty (60) days after the clerk issues the certificate of disbursements, the clerk shall hold the surplus pending further order of this court.

9.    On filing the certificate of title, defendants and all persons claiming under or against defendants since the filing of the notice of lis pendens shall be foreclosed of all estate or claim in the property and the purchaser at sale shall be let into possession of the property.

10.    The court finds that the hours reflected in the affidavits submitted were reasonably expended by plaintiff's counsel in connection with prosecuting the claim and that an hourly rate of $255.00 is appropriate.  PLAINTIFF'S COUNSEL REPRESENTS THAT THE ATTORNEY FEE AWARDED DOES NOT EXCEED ITS CONTRACT FEE WITH THE PLAINTIFF.  The Court finds that there are no reduction or enhancement factors for consideration by the Court pursuant to Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985).

11.    NOTICE PURSUANT TO AMENDMENT TO SECTION 45.031, FLA. ST. (2006).

IF THE PROPERTY IS SOLD AT PUBLIC AUCTION, THERE MAY BE ADDITIONAL MONEY FROM THE SALE AFTER PAYMENT OF PERSONS WHO ARE ENTITLED TO BE PAID FROM THE SALE PROCEEDS PURSUANT TO THIS FINAL JUDGMENT.

CASE NO: 50-2010-CA-026014 XXXX MB

IF YOU ARE A SUBORDINATE LIENHOLDER CLAIMING A RIGHT TO FUNDS REMAINING AFTER THE SALE, YOU MUST FILE A CLAIM WITH THE CLERK NO LATER THAN SIXTY (60) DAYS AFTER THE SALE.  IF YOU FAIL TO FILE A CLAIM, YOU WILL NOT BE ENTITLED TO ANY REMAINING FUNDS.

12.    IF YOU ARE THE PROPERTY OWNER, YOU MAY CLAIM THESE FUNDS YOURSELF. YOU ARE NOT REQUIRED TO HAVE A LAWYER OR ANY OTHER REPRESENTATION AND YOU DO NOT HAVE TO ASSIGN YOUR RIGHTS TO ANYONE ELSE IN ORDER FOR YOU TO CLAIM ANY MONEY TO WHICH YOU ARE ENTITLED. PLEASE CHECK WITH THE CLERK OF BROWARD COUNTY WITHIN TEN (10) DAYS AFTER THE SALE TO SEE IF THERE IS ADDITIONAL MONEY FROM THE FORECLOSURE SALE THAT THE CLERK & COMPTROLLER HAS IN THE REGISTRY OF THE COURT.

13.    The plaintiff may assign the judgment and credit bid by the filing of an assignment without further order of the court.

14.    The court retains jurisdiction of this action to enter further orders that are proper, including, without limitation, writs of possession and deficiency judgments.

Ordered at Palm Beach County, Florida, on _____January 15_____, 2013.

DATE & SIGN

JAN 15 2013

JUDGE

_____
Circuit Court Judge    JANIS BRUSTARES KEYSER

CASE NO: 50-2010-CA-026014 XXXX MB

Copies furnished to:

Stephen P. Drobny, Esquire
Jones, Walker, Waechter, Poitevent,
Carrere & Denegre, LLP
201 South Biscayne Boulevard
Miami Center, Suite 2600
Miami, Florida 33131
*Counsel for plaintiff*

Jeffrey M. Siskind, Esq.
525 South Flagler Drive, Suite 500
West Palm Beach, Florida 33401
  *Pro se and counsel for defendant TPC, LLC*

Design Contracting, Inc
Through its Registered Agent:
Thomas S. Waldron, Jr.
3694 23rd Avenue South, Suite 1
Lake Worth, Florida 33461

First Intracoastal Realty, LLC
Through its Registered Agent:
Corporation Service Company
1201 Hays Street
Tallahassee, Florida 32301

George A. Maler
10282 Heronwood Lane
West Palm Beach, Florida 33412

Marine Engine Equipment Company
  d/b/a The Generator People
Through its Registered Agent:
David R. Kelso
2 Rogart Circle
Boynton Beach, Florida 33426

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT, IN AND FOR PALM BEACH COUNTY, FLORIDA.

GENERAL JURISDICTION DIVISION

CASE NO: 50-2010-CA-026014 XXXX MB

OPTIMUMBANK,

      Plaintiff,

vs.

TP5, LLC, a Florida limited liability company, JEFFREY M. SISKIND, an individual, GEORGE A. MALER, an individual, FIRST INTRACOASTAL REALTY, LLC, a Florida limited liability company, DESIGN CONTRACTING, INC., a Florida corporation, MARINE ENGINE EQUIPMENT COMPANY, a Florida corporation, d/b/a THE GENERATOR PEOPLE, and ANY UNKNOWN TENANTS IN POSSESSION,

      Defendants.

_____/

## ASSIGNMENT OF JUDGMENT

      **KNOW ALL PERSONS BY THESE PRESENTS: OPTIMUMBANK,** a Florida banking corporation ("First Party"), in consideration of the sum of **TEN AND NO/100 ($10.00) DOLLARS,** and other good and valuable consideration paid by **OB REAL ESTATE HOLDINGS 1732, LLC,** a Florida limited liability company ("Second Party"), at or before the ensealing and delivery of these presents, the receipt whereof is acknowledged, hereby grants, bargains, sells, assigns, transfers and sets over unto Second Party all of First Party's right, title and interest in and to that certain Final Judgment of Foreclosure and for Monetary Damage in Favor of Plaintiff upon Default of Stipulation dated January 15, 2013, in favor of First Party and against TP5, LLC, Jeffrey M. Siskind, George A. Maler, First Intracoastal Realty, LLC, Design Contracting, Inc., and Marine Engine Equipment Company, d/b/a The Generator People, in Palm Beach County Circuit Court Case No. 50-2010-CA-026014 XXXX MB, recorded on March 28, 2013 in Official Records Book 21770, Page 1428 of the Public Records of Hillsborough County, Florida (the "Final Judgment"), and any and all bidding rights First Party may have at the foreclosure sale.  First Party also assigns to Second Party all of its rights and interest in the underlying note and mortgage upon which the Final Judgment is based.  First Party agrees to

{81130329.1}

CASE NO.  50-2010-CA-026014 XXXX MB
Page 2 of 2

execute and provide the Second Party with any further instruments reasonably necessary to effectuate the assignment of the note and mortgage upon which the Final Judgment is based, which instruments shall be prepared by Second Party at Second Party's sole cost and expense and shall be in form reasonably acceptable to First Party.  First Party represents that it duly owns and holds the note and mortgage upon which the Final Judgment is based and has not transferred, sold or assigned the Final Judgment, the note or mortgage, except as set forth herein.

**TO HAVE AND TO HOLD** the same unto Second Party and its legal representatives, successors and assigns forever.

**IN WITNESS WHEREOF,** Assignor has set its hands ands seals this 29 day of April, 2013.

Signed, sealed and delivered in our presence:

Print name: Pamela A. Perrot

Print name: Michael Vogel

**OPTIMUMBANK,** a Florida banking corporation

By: _____
Name: Jeffrey Camp
Title: Executive Vice President

STATE OF FLORIDA          )
                          :  ss.
COUNTY OF Broward         )

The foregoing instrument was acknowledged before me this 29 day of April, 2013, by _____, as OptimumBank, a Florida banking corporation, on behalf of the corporation, who is personally known to me or who has produced _____ (type of identification) as identification.

_____
Signature of person taking acknowledgment

Maria T. Riggi
Name of acknowledger typed, printed or stamped

Notary Public
Title or rank

MARIA T. RIGGI
Notary Public - State of Florida
My Comm. Expires Aug 21, 2016
Commission # EE 828046

{81130329.1}2

# EXHIBIT J

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT, IN AND FOR PALM BEACH COUNTY, FLORIDA.

GENERAL JURISDICTION DIVISION

CASE NO: 50-2010-CA-026014 XXXX MB

OPTIMUMBANK,

      Plaintiff,

vs.

TP5, LLC, a Florida limited liability company, JEFFREY M. SISKIND, an individual, GEORGE A. MALER, an individual, FIRST INTRACOASTAL REALTY, LLC, a Florida limited liability company, DESIGN CONTRACTING, INC., a Florida corporation, MARINE ENGINE EQUIPMENT COMPANY, a Florida corporation, d/b/a THE GENERATOR PEOPLE, and ANY UNKNOWN TENANTS IN POSSESSION,

      Defendants.                            /

**ORDER ON MOTION TO RECONSIDER FINAL JUDGMENT OF FORECLOSURE AND FOR MONETARY DAMAGES IN FAVOR OF PLAINTIFF UPON DEFAULT OF STIPULATION; AND REQUEST TO VACATE SAME FOR FRAUD UPON THE COURT, AND FOR EVIDENTIARY HEARING**

This matter comes before the Court on April 12, 2013 on TP5, LLC's and Jeffrey M. Siskind's Motion To Reconsider Final Judgment Of Foreclosure And For Monetary Damages In Favor Of Plaintiff Upon Default Of Stipulation; And Request To Vacate Same For Fraud Upon The Court, And For Evidentiary Hearing (the "Motion"). Upon consideration of the Motion, examination of the pleadings and papers on file, hearing the argument of counsel, and being further advised in the premises, the Court **ORDERS** and **ADJUDGES** as follows:

    1.     The Motion is **DENIED.**

**ORDERED** in chambers at Palm Beach County, Florida, on April _18_, 2013.

                                             _____

                                            Circuit Court Judge

{M0519166.1}

CASE NO.  50-2010-CA-026014 XXXX MB

Conformed copies to:

Stephen P. Drobny, Esq.
Jones Walker LLP
Miami Center, Suite 2600
201 South Biscayne Boulevard
Miami, Florida 33133
    *Counsel for Plaintiff*

Larry M. Mesches, Esq.
Klett, Mesches, & Johnson, P.L.
2855 PGA Blvd, Ste 100
Palm Beach Gardens, Florida 33410
lmesches@kmjlawgroup.com
    *Counsel for Defendants*

Jeffrey M. Siskind, Esq.
525 S. Flagler Drive, Suite 500
West Palm Beach, FL 33401
jeffsiskind@msn.com
    *Counsel for Defendants TP5, LLC and Jeffrey M. Siskind, individually*

TP5, LLC
Trump Plaza Professional Building
525 South Flagler Drive, Suite 500
West Palm Beach, Florida 33401
  Defendant

George A. Maler
12509 World Cup Lane
Wellington, Florida  33414
  Defendant

First Intracoastal Realty, LLC
c/o Corporation Service Company, R. A.
1201 Hays Street
Tallahassee, Florida 32301
  Defendant

Design Contracting, Inc
c/o Thomas S. Waldron, Jr., R. A.
3694 23rd Avenue South, Suite 1
Lake Worth, Florida 33461
  Defendant

{M0519166.1}

CASE NO.  50-2010-CA-026014 XXXX MB

Marine Engine Equipment Company
d/b/a The Generator People
c/o David R. Kelso, R. A.
2 Rogart Circle
Boynton Beach, Florida 33426
  Defendant

# EXHIBIT K



**ORDERED in the Southern District of Florida on February 28, 2013.**

Paul G. Hyman, Chief Judge
United States Bankruptcy Court

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:                                    CASE NO.: 13-13096-BKC-PGH

Jeffrey Marc Siskind,                     CHAPTER 11

_____Debtor._____/

Optimumbank,                              ADV. NO.: 13-1147-BKC-PGH-A

         Plaintiff.

v.

Jeffrey M. Siskind, TP5 LLC,
First Intracoastal Realty LLC,
Design Contracting Inc., and
Marine Engine Equipment
Company,

_____Defendants._____/

1

<u>ORDER (1) DENYING NOTICE OF REMOVAL, MOTION FOR
SUBSTANTIVE CONSOLIDATION, AND DECLARATORY RELIEF AND (2)
SANCTIONING ATTORNEY</u>

**THIS MATTER** came before the Court on February 25, 2013, upon Jeffrey M. Siskind's (the "Debtor") *Notice of Removal and Motion for Substantive Consolidation and Declaratory Relief Under 28 USC 2201(a)* (the "Motion") (ECF No. 1). For the reasons stated below, the relief requested in the Debtor's Motion is denied.

From the outset, each of the Debtor's requests should have been filed as a separate document.   Instead, the Debtor improperly combined three separate requests for relief into one motion: (1) Notice of Removal; (2) Motion for Substantive Consolidation; and (3) Request for Declaratory Relief Under 28 USC § 2201(a). As described below, the request for declaratory relief should have been filed as an adversary proceeding, and thus it was inappropriately included with the other requests. As a matter of common sense, the notice of removal is a notice and thus should not have been included with a motion. Additionally, the Debtor was required to serve the notice of removal on the parties to the state court action, but not necessarily the other requests. As such, separate pleadings are required.

Even if the Debtor's requests had been properly filed as three separate documents, each request must be denied for other reasons. First the Debtor's request for removal must be denied for improper service.  The Debtor failed to properly serve the Notice of Removal pursuant to Rule 9027(b) of the Federal Rules of Bankruptcy Procedure, which requires that "[p]romptly after filing the notice of

removal, the party filing the notice shall serve a copy of it on all parties to the removed claim or cause of action." The Debtor filed a certificate of service indicating that the electronic filers on CM/ECF received notice, but he did not indicate that all parties to the state court action received notice. In accordance with the rule, *all* parties to the state court action must also receive notice. The Debtor should have provided paper notices to such parties since they do not receive CM/ECF notifications. Merely indicating that the Plaintiff in the state court action received e-mail notice is insufficient.

Second, the Debtor's motion for substantive consolidation must also be denied. The Debtor improperly seeks to consolidate purportedly related matters. TP5 LLC, which the Debtor alleges is his alter ego, has not filed for bankruptcy. Here, the Debtor merely alleged that TP5 LLC was another name for himself in his Amended Document Voluntary Petition (the "Amended Petition") (ECF No. 6, Case No. 13-13096-BKC-PGH). Local Rule 1015-1 provides a procedure for the substantive consolidation of cases. However, the rule only applies to the substantive consolidation of two or more related cases. TP5 LLC must *separately* file for bankruptcy in order for consolidation to be appropriate. The Court cannot consolidate a nonexistent case with a pending case. Consequently, the Debtor's request for consolidation is inappropriate and must be denied.

Third, the Debtor's request for declaratory relief under 28 USC § 2201(a) is denied for the following reasons. Rule 7001(9) of the Federal Rules of Bankruptcy Procedure requires that an action seeking declaratory judgment be filed as an

3

adversary proceeding. Since the Debtor failed to file a separate adversary proceeding, he is in violation of the requirements of Local Rule 7003-1. Moreover, since the request for declaratory relief should have been in the form of an adversary, it should not have been included with the other requests for relief. Since the Debtor failed to file the request for declaratory relief as a separate adversary proceeding, he is also not in compliance with Rule 7004 of the Federal Rules of Bankruptcy Procedure.

Finally, the Debtor also failed to properly amend his petition to add additional names under which the Debtor alleges he does business. Local Rule 1009-1(B) requires that:

> A debtor or debtors seeking to amend a petition to change a debtor's name (including designation of other or different names under the category 'all other names' required to be listed on the petition), or to delete the name of a debtor, shall file a motion with the court requesting an approval of such amendment. The movant shall serve any order adding, deleting or changing any debtor's name in a petition upon all parties of record and file a certificate of service thereof. A debtor may not file a motion to amend a petition to add a joint debtor; the additional debtor shall file a separate petition, and may file a motion for joint administration and/or a motion for substantive consolidation with a pending case.

In the present matter, the Debtor merely filed an Amended Petition to add additional names used by the Debtor, which include TP5, LLC and Siskind Legal. He failed to comply with the rule by neglecting to file a motion requesting approval of additional names for the Debtor.

4

As discussed above, the Movant failed to comply with both the Local Rules and the Federal Rules of Bankruptcy Procedure. Thus, the Motion must be denied. As a result, it is hereby **ORDERED AND ADJUDGED** that:

1. The Motion is **DENIED** without prejudice.

2. The Debtor, an attorney representing himself, is hereby ordered to pay $250.00 for each violation of the rules indicated herein, resulting in a total fine of $1,000.00. The fine is payable to the Clerk of the Court within 10 days of entry of this Order.

3. The Debtor shall not file any anything with the Court until he files with this Court a certification that he has read the Local Rules and the Federal Rules of Bankruptcy Procedure in their entirety.

###

Copies furnished to:

Jeffrey M. Siskind
525 S Flagler Dr #500
West Palm Beach, FL 33401

Jeffrey M. Siskind, Esq.

Optimumbank
c/o Jones Walker et al.
201 s. Biscayne Boulevard
Ste 2600
Miami, FL 3131

*Jeffrey M. Siskind is hereby directed to serve a copy of this Order on all interested parties and file a Certificate of Service thereof in accordance with Local Rules 2002-1(F), 5005-1(G)(2), and 9021-1(A).*

5

# EXHIBIT L

IN THE CIRCUIT COURT OF THE FIFTEENTH
JUDICIAL CIRCUIT, IN AND FOR PALM
BEACH COUNTY, FLORIDA.

GENERAL JURISDICTION DIVISION

CASE NO.  50-2010- CA-026014-XXXX MB Div. AF

OPTIMUMBANK,

       Plaintiff,

vs.

TP5, LLC, a Florida limited liability
company, JEFFREY M. SISKIND,
an individual, GEORGE A. MALER,
an individual, FIRST INTRACOASTAL
REALTY, LLC, a Florida limited liability
company, DESIGN CONTRACTING,
INC., a Florida corporation, MARINE
ENGINE EQUIPMENT COMPANY, a
Florida corporation, d/b/a THE
GENERATOR PEOPLE, and ANY
UNKNOWN TENANTS IN POSSESSION,

       Defendants.

_____/

## ORDER ON PLAINTIFF'S MOTION TO  RESCHEDULE FORECLOSURE SALE

THIS CAUSE came before the Court, on March 28, 2013, upon Plaintiff's Motion to
Reschedule Foreclosure Sale ("Motion").  Upon consideration of the Motion, examination of the
pleadings and papers on file, hearing the argument of counsel, and being further advised in the
premises, the Court ORDERS AND ADJUDGES as follows:

    1. The Motion is GRANTED.

CASE NO.  50-2010- CA-026014-XXXX MB Div. AF

2. The Court directs the clerk to reschedule the foreclosure sale in this case to be held on the _20_ day of ___May___, 2013, to the highest and best bidder, at www.mypalmbeachclerk.clerkauction.com.

ORDERED in chambers on the __18_ day of March, 2013 in Palm Beach County, Florida.

_____
Circuit Court Judge

Copies furnished to:

Melissa A. Campbell, Esq.
Jones Walker LLP
201 S. Biscayne Blvd., Suite 2600
Miami, Florida 33131
Designated e-mail: miamiservice@joneswalker.com
*Counsel for Plaintiff*

TP5, LLC
Trump Plaza Professional Building
525 South Flagler Drive, Suite 500
West Palm Beach, Florida 33401
Defendant

Jeffrey M. Siskind, Esq.
Trump Plaza Professional Building
525 South Flagler Drive, Suite 500
West Palm Beach, Florida 33401
Fax No.: (561) 832-7668
E-mail: jeffsiskind@msn.com
Defendant

George A. Maler
12509 World Cup Lane
Wellington, Florida  33414
Defendant

First Intracoastal Realty, LLC
c/o Corporation Service Company, R. A.
1201 Hays Street
Tallahassee, Florida 32301
Defendant

{M0513112.1}

2

CASE NO.  50-2010- CA-026014-XXXX MB Div. AF

Design Contracting, Inc
c/o Thomas S. Waldron, Jr., R. A.
3694 23rd Avenue South, Suite 1
Lake Worth, Florida 33461
Defendant

Marine Engine Equipment Company
d/b/a The Generator People
c/o David R. Kelso, R. A.
2 Rogart Circle
Boynton Beach, Florida 33426
Defendant